[No. G005739. Fourth Dist., Div. Three. Feb. 26, 1990.]

BD INNS, Plaintiff and Appellant, v.
HOWARD R. POOLEY, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts II, III, and IV.

COUNSEL

Thomas W. Hood and Margie L. Jesswein for Plaintiff and Appellant.

Roger A. Saevig and Marc J. Jennings for Defendant and Appellant.

OPINION

**SONENSHINE, J.**—Howard R. Pooley appeals a judgment of specific performance rendered against him and in favor of BD Inns. BD Inns also appeals, contending the trial court erred in denying its claim for incidental and consequential damages for lost profits and carrying costs.

## I

Pooley agreed to buy an 840-unit motel being built by BD Inns.[2] The $6,825,000 purchase price included: a cash down payment of $1.5 million, the assumption of a $4.4 million first trust deed and a purchase money second trust deed of $925,000.

The escrow instructions were signed on February 7, 1984, by the president and general partner of BD Inns, and by Pooley, individually and as the general partner of a partnership. On May 22, Pooley, claiming the deal had been misrepresented, cancelled the sale.

BD Inns filed the underlying complaint seeking specific performance and damages for breach of contract. The court denied breach of contract relief but ordered Pooley, as an individual, to specifically perform the contract. If the purchase price plus interest was not paid within 30 days of the judgment, the property was to be sold and Pooley was to pay BD Inns the difference between the contract price, plus interest, and the ultimate sales price. BD Inns' request for incidental and consequential damages, due to Pooley's breach and delay in performance, was denied.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . .

## V

The major thrust of Pooley's argument is the trial court erred in granting specific performance. He alleges BD Inns failed to prove the essential elements because: (1) the contract was uncertain and unreasonable; (2) the consideration was inadequate; (3) there was an adequate remedy at law; and (4) Code of Civil Procedure section 580b bars specific performance.

### A. UNCERTAINTY AND REASONABLENESS

Pooley argues the escrow instructions were uncertain as to the identity of the purchasers; title to the motel was to vest in Guardian Trust Deed

---

[2] The trial court found "the contract was entered into between plaintiff and defendant Pooley as an individual, and no others." Pooley, as discussed, *post* , alleges there were other buyers. He points to the escrow instructions which contemplate a three-way exchange of property between BD Inns and Royal Palms Project III, a California limited partnership (whose general partner was to be Pooley) and Guardian Trust Deed Services.

Pooley as the general partner and Guardian were named in the complaint but were neither served nor dismissed.

\* See footnote 1, *ante,* page 289.

Services, Howard Pooley and Royal Palms, and Pooley had "the right to nominate others to acquire the title with respect to that interest originally to be vested to him . . . ." Relying on *Cisco* v. *Van Lew* (1943) 60 Cal.App.2d 575 [141 P.2d 433], he alleges "escrow instructions that provide[ ] for sale to the seller's agent 'or his nominee' are too uncertain."

■ Citing Civil Code section 3391, subdivision 2, Pooley maintains the contract is unreasonable when specifically enforced against him alone. He argues "the orders are completely devoid of the true fact that said property was being exchanged for other property and cash contributed primarily by Pooley's limited partners."

Both contentions are merely thinly distinguished attacks on the trial court's factual finding he was the only buyer.[7] As we already said, substantial evidence supports this finding.

## B. CONSIDERATION

■ Pooley maintains he was promised a $320,000 positive cash flow the first year, assured he would be able to personally manage the motel, and told the motel would be a Best Western or Quality Inn affiliate.[8] Because none of this was true, he contends his assent to the contract is void; it was

---

[7] Pooley, relying on *Crittenden* v. *Hansen* (1943) 59 Cal.App.2d 56 [138 P.2d 37] and Civil Code section 3390, maintains equity will not decree specific performance where the enforcement of the judgment is difficult or practically impossible. He argues this judgment cannot be performed because it requires several limited partnerships to pay money, transfer funds pursuant to a three-way exchange, and exchange a specific apartment complex. And, Pooley reminds us the limited partners, and Pooley as the general partner, were never served. There is no indication the specific piece of property can still be exchanged and it is unclear in whom (or what) the property is to vest.

Pooley concedes a party may, in a single action, seek both reformation and specific performance (Civ. Code, § 3402) but maintains BD Inns sought only damages for the breach of the contract or specific performance. However, BD Inns, in its pleading, identified Pooley as the purchaser and asked that he be ordered to specifically perform the contract. Moreover, as discussed above, the trial court found Pooley was the buyer! Completion of the sale was possible and reformation was unnecessary.

[8] Without any citation to the record, Pooley argues "it shocks the sense of morality and fair dealing which characterizes the transactions between man and man, that one motel with a sales price of $6,825,000, with a $320,000 positive cash flow for the first year, that could be managed by the owners, and had a Best Western or a Quality affiliation, plus an additional $420,000 Olympic contract for the first year is completely different and disproportionate consideration to the same motel with the same sales price but with an approximately $300,000 negative cash flow, that could not be managed by the owners, had a more costly Rodeway franchise, and no additional $420,000 Olympic contract income for the first year. It is clear from the above discussion that when the true consideration became known it was clearly inadequate from that originally represented."

obtained by misrepresentation, concealment, and mistake. (Civ. Code, § 3391, subds. 3 and 4.)[9]

If evidence exists to support the trial court's factual determination, we are bound by it. Pooley argues there is substantial evidence to support findings of misrepresentation. This is not the test. The issue is whether there is substantial evidence to support the trial court's findings. There is. The record is replete with evidence establishing Pooley knew the Best Western affiliation was only a "hope." He had the opportunity to check all of the cash flow projections. Moreover, the escrow instructions speak for themselves: No promises were made.

### C. ADEQUATE REMEDY AT LAW

Former Civil Code section 3307 provides: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him." The 1983 amendment expanded the definition of detriment to include consequential damages and interest.[10]

Pooley contends, therefore, Civil Code section 3307 provides BD Inns with an adequate remedy at law. He maintains, at worst, he should have been responsible for the excess, if any, of the amount which would have been due to BD Inns under the contract over the value of the property, plus consequential damages and interest.[11]

California Real Property Remedies and Practice (Cont.Ed.Bar Supp. 1989) section 5:28, pages 44-45, notes: "Civil Code § 3307 now provides that on breach of an agreement to sell property a seller can recover consequential damages and interest as well as the excess (if any) of the amount

---

[9] Pooley's interpretation of the facts are as follows: (1) The prospectus indicated many material figures which "were materially misrepresented in numerous instances." He was not told about newer projections which indicated a negative rather than a positive cash flow. If this was not fraud, says Pooley, it was a "mistake." (2) He was led to believe the Olympic committee had rented 100 percent of the rooms for 30 days at $120 a day. No contract existed. (3) Pooley told BD Inns he wished to be able to manage the motel. He was told a professional management team would be necessary for a few months but after that Pooley could do it. In fact, a five-year management contract had already been executed. In addition, the first trust deed holder requirement for a professional manager was concealed from him.

[10] Civil Code section 3307 now provides: "The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest."

[11] We note Pooley does not cite us to any portion of the record indicating he made this argument below.

that would have been due the seller under the contract over the value of the property. Consequently, there is some doubt whether a seller could obtain specific performance of a sales agreement if the fair market value of the property equaled [*sic*] the contract price, because under CC § 3307, the seller can now recover any consequential damages sustained, and thus has an adequate remedy at law." We cannot agree.

In reviewing the legislative history of Civil Code section 3307, it is apparent the Legislature intended to expand the damages available for the breach of a real property contract. It did not, however, intend to eliminate a seller's ability to seek, in the alternative, specific performance.[12]

In *Waratah Oil Co.* v. *Reward Oil Co.* (1914) 23 Cal.App. 638 [139 P. 91], the court held a seller cannot be denied specific performance simply because the property could be sold. (See also *Ellison* v. *Ventura Port District* (1978) 80 Cal.App.3d 574 [145 Cal.Rptr. 665].)

BD Inns had more than one remedy available to it. "When [Pooley] repudiated the contract [BD Inns] had a choice of remedies which [it] might pursue. [It] might have sued for specific performance . . . [or it] might have treated the contract as breached and have sued the defendants for damages [it] suffered by reason of the breach." (*Hollypark Realty Co.* v. *MacLoane* (1958) 163 Cal.App.2d 549, 552 [329 P.2d 532].)

### D. Code of Civil Procedure Section 580b

■ Pooley argues Code of Civil Procedure section 580b prohibited the court from ordering specific performance.[13] He maintains *Goldsworthy* v. *Dobbins* (1952) 110 Cal.App.2d 802 [243 P.2d 883], relied on by the trial judge, is distinguishable because here there is a purchase money second trust deed. *Goldsworthy* addressed a cash sale. (*Id.*, at p. 808.)

Pooley misunderstands both Code of Civil Procedure section 580b and *Goldsworthy*. "A 'deficiency judgment' is created whenever the seller recov-

---

[12] The Legislature, in enacting Civil Code section 3307, was aware of Civil Code section 3387 which establishes a presumption that the breach of any agreement to transfer real property cannot be adequately compensated for by money damages.

[13] He states: "It is clear from the lower court's decree ordering appellant to purchase the property and the appellant failing to do so within a certain period of time, that a judgment for the purchase price would be entered against him. Since this purchase price would include the amount of the purchase money second trust deed entered into on a credit transaction based upon the appellant's credit, such decree would permit by its terms what could not have been permitted had the transaction closed, namely a judgment for the entire amount of the purchase money second trust deed. Accordingly, the order for specific performance violates the anti-deficiency provision of CCP § 580b."

ers anything in addition to the property or the fair market value of the security. The purpose of the deficiency prohibition is to require the seller to look to the value of the security, first and foremost, as the actual security for the borrower-purchaser's monetary obligation, and thereby prevent land sales which are unsound because of over-valuation." (1 Miller & Starr, Current Law of Cal. Real Estate (1975) § 5:32, pt. 2, p. 172, fn. omitted.) In other words, Code of Civil Procedure section 580b is inapt where the buyer cannot simultaneously lose the land and suffer personal liability. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981].)

"The land sale contract used as a security device should be distinguished from the land sale contract used as a marketing device. Section 580b applies only to land sale contracts where the *seller retains title to the property as security* for the payment of the purchase price and not to 'sales' in which there is contemplated a transfer of title. Therefore, where the seller transfers title to the buyer under a sale agreement and the buyer subsequently defaults in the payment of the purchase price according to the terms of the agreement, Section 580b would not be applicable to bar an action by the seller to collect the unpaid balance of the purchase price." (5 Augustine & Zarrow, Cal. Real Estate Law and Practice (1989) § 122.62, p. 122-42, fn. omitted, italics added.)

The trial judge was correct. If the property is to be sold, Pooley is responsible only for the difference between the sales price and the contract price. Section 580b does not apply because no security interest is to be created. No opportunity for a deficiency exists.

## VI

### BD INNS' APPEAL

 The trial court granted BD Inns' prayer for specific performance but found, as a matter of law, it was not entitled to compensation for operating losses and loss of income.[14]

---

[14] As damages, BD Inns alleges: "BD INNS' losses in having to hold onto the property increased its damages. If POOLEY had performed and purchased the property for $6,825,000.00 in April or May of 1984, BD INNS would have received not only the purchase price, but additionally would have obtained 10% on its first deed of trust in the principal amount of $925,000.00. From May, 1984 to the time of judgment that loss was $246,667.00. Further loss was suffered because of extension fees to both the permanent lender as well as the construction lender in the amount of $36,666.00 to the date of judgment. Further operating losses BD INNS would not have incurred if it had not been forced to take on the management of the Gateway Inn, of $698,017.00, include but are not limited to interest charges on the trust deeds against the property in the amount of $2,143,815.00, an additional second mort-

■ As explained in *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828 [83 Cal.Rptr. 855], when a seller chooses to seek damages based on breach of contract, the seller gives up "his [or her] interest in the unpaid purchase price and [is] awarded, in turn, the equitable interest in the land plus damages equal to the difference between the value of the land to him [or her] at the date of breach and the contract price (Civ. Code, § 3307). The loss of bargain damages which section 3307 allows are, in their nature a substitute for requiring the vendee to perform." (*Id.*, at p. 848.)

In contrast, "If the disappointed vendor chooses to remain at all times ready to perform and seeks specific performance of the contract, he [or she] foregoes his [or her] equitable ownership in, and right to possession of, the subject land and elects to retain his [or her] interest in the purchase price in accordance with the terms of the contract. A court sitting in such an equity suit, in addition to decreeing specific performance of the terms of the contract, may award damages *in the form of interest* for any delay in the vendee's performance of his obligation to pay." (3 Cal.App.3d at p. 848 at p. 847, italics added.)

In other words, the injured seller has a choice of remedies. It can prove the contract to purchase has been breached and seek damages occasioned by that breach. In the alternative, a decree of specific performance can be sought. In that case, the goal is to put the parties back in the position they would have been had the contract been timely performed. "Confusion [insofar as what may be awarded in addition to specific performance] has existed because of the informal use of the term 'damages' in connection with such an award, but it is settled that such compensation neither constitutes damages as contemplated in an action for breach of contract, nor implies legal damages." (*Greenstone* v. *Claretian Theo. Seminary* (1959) 173 Cal.App.2d 21, 29 [343 P.2d 161].)

"In California the compensation which may be awarded incident to a decree of specific performance is not for breach of contract and is not legal damages. The complainant affirms the contract and asks that it be performed. Since the time for performance has passed, the court relates that performance back to that date, by treating the parties as if the change in ownership had taken place at that time. Thus the buyer is entitled to the rents and profits from the time the contract should have been performed, and the seller is entitled to an offset for the interest on the purchase money

---

gage on other property at 17% in the amount of $102,000.00, national franchise fees in the amount of $196,700.00, and legal fees incurred in extricating the first trust deed from default in the amount of $62,176.00. The total loss sustained in having to hold onto the property is of course subtracted from the gross income for the same period of time in the amount of $1,370,798.00, bringing the total loss to $1,569,226.00."

which he would have received had the contract been performed. The process is more like an accounting between the parties than an assessment of damages. [Citations.]" (*Hutton* v. *Gliksberg* (1982) 128 Cal.App.3d 240, 248 [180 Cal.Rptr. 141].)

■■ BD Inns seeks recompense for interest lost on the notes, extension fees, and operating losses. But having obtained a decree of specific performance, it is entitled only to be compensated for that to which it would have been entitled had the contract been performed: the net purchase price. Thus, the only accounting to be done here is a calculation of interest, which the trial court properly awarded.[15]

Judgment affirmed. BD Inns to receive costs.

Scoville, P. J., and Mandel, J.,* concurred.

---

[15] "Regardless of which remedial course an aggrieved seller takes, the chances are that even if [it] is successful, [it] will not be satisfied with the relief granted." (3 Augustine & Zarrow, *op. cit. supra*, § 75.01, at p. 75-5.) Such is the situation here.

* Assigned by the Chairperson of the Judicial Council.