[No. E012413. Fourth Dist., Div. Two. Oct. 3, 1994.]

JAMES C. ROGERS et al., Plaintiffs and Respondents, v.
RODNEY J. DAVIS et al., Defendants and Appellants.

COUNSEL

Mark L. Bradbury for Defendants and Appellants.

M. Michael Smith for Plaintiffs and Respondents.

OPINION

TIMLIN, Acting P. J.—

I

INTRODUCTION

Defendants Rodney J. Davis and Mihan Davis (defendants) appeal from a judgment in favor of plaintiffs James C. Rogers and Sonhui Rogers (plaintiffs).[1] Plaintiffs had sued defendants, asserting two "causes of action," for specific performance, or alternatively, damages, based on the allegations that defendants had breached a contract to sell to plaintiffs a single-family

---

[1]The notice of appeal, filed February 2, 1993, purports to be from a judgment entered January 6, 1993; however, judgment was not entered until March 15, 1993. We treat the

residence located in the City of Ontario (the property).[2] Between the time the action was filed and judgment was rendered, the property was sold to third parties at a trustee's foreclosure sale. The judgment therefore apportioned between plaintiffs and defendants the balance of the sales proceeds held by the trustee following payment of the beneficiary on the foreclosed trust deed(s) (the sales proceeds). Defendants were awarded $9,460 of the sales proceeds, and plaintiffs, as the equitable owners of the property, were awarded $20,063.01 of such proceeds.

## II

### ISSUES ON APPEAL[3]

Defendants' contentions on appeal are:

(1) The trial court erroneously found that plaintiffs, as buyers under the contract, were the equitable owners of the property at the time the property was sold by foreclosure. Such finding exceeded the "scope of the pleadings" and exceeded the jurisdiction of the court, sitting as a "court of law," because once plaintiffs elected at trial to seek damages for breach of contract, they waived all equitable interest in the property.

(2) The trial court failed to apply the correct and exclusive measure of damages for breach of a contract to sell real property, which is found in Civil Code section 3306.

(3) Plaintiffs failed to carry their burden of producing evidence of damage, as provided in section 3306, and thus an award of damages was improper.

(4) In determining damages the trial court erred by failing to offset against the amounts plaintiffs paid toward the purchase price the reasonable rent they did not pay during their occupancy of the property.

As to issue (1), we conclude that the trial court did not err by finding plaintiffs were the equitable owners of the property at the time of the

---

premature appeal, filed after rendition of judgment but before its entry, as being from the later-entered judgment. (Cal. Rules of Court, rule 2(c).)

[2]Legally, plaintiffs had but one cause of action, for breach of contract. Specific performance and damages are simply alternative *remedies* for breach of contract. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 732, at pp. 180-181.)

[3]Defendants do not attack the trial court's findings and conclusions that there was, in fact, a contract between them and plaintiffs for the sale and purchase of the property (contract), that defendants breached the contract, that the provisions of that contract were sufficiently certain to support the remedy of specific performance, and that $9,460 was the balance of the purchase price which plaintiffs owed to defendants after the foreclosure sale.

foreclosure sale and that plaintiffs had not waived such interest, thereby entitling them to a portion of the sales proceeds as an equitable remedy. This conclusion makes issues (2) and (3) moot.

We further conclude that the trial court did not err in refusing to award defendants an offset against plaintiffs' portion of the sales proceeds for the reasonable rental value of the property; accordingly, the judgment shall be affirmed.

## III

### FACTS

In May 1979, plaintiffs and defendants[4] entered into an oral contract for the purchase and sale of the property. Plaintiffs, as buyers, were to assume the existing $42,000 first trust deed note and also to pay defendants $18,000 for a total purchase price of $60,000. Apparently, plaintiffs contemplated refinancing or executing a second trust deed note in order to obtain funds to pay defendants the $18,000. However, plaintiffs discovered that defendants previously had encumbered the property with a second deed of trust securing an $11,000 note, the proceeds of which they (defendants) intended to use to purchase a new home.

After July 1979, plaintiffs occupied the property and paid on the first trust deed and claimed interest on such payments as deductions on their income tax returns. In the meantime, defendants paid on the second trust deed. Plaintiffs also fenced the property, landscaped it, and put in a patio. During this time, plaintiffs on a number of occasions offered to open escrow and complete the sales transaction, but defendants demurred, suggesting that they just wait until interest rates came down. However, defendants assured plaintiffs that plaintiffs owned the property.

In 1984, at defendants' request, plaintiffs began making the payments on the second trust deed, with the understanding that these payments would be credited toward the $18,000 plaintiffs owed the defendants on the purchase price. Plaintiffs continued to advise defendants they were ready, willing and able to complete the sales transaction, but defendants kept putting it off.

In November 1987, defendants finally agreed to complete the sale. Plaintiffs and defendants contacted a lender and, with the lender's help, calculated the exact amount plaintiffs owed defendants. This amount was to be paid off

---

[4]Plaintiff Mihan Davis and defendants were related by reason of Mihan being Sonhui's daughter. It is not clear whether James Rogers was Mihan's father or stepfather.

as part of a refinancing, which would result in paying off the first and second deeds of trust and providing defendants with $9,100 in cash. However, defendants then refused to sign escrow documents, Rodney Davis having decided that he wanted plaintiffs to pay the "full value," i.e., the appraised value of the house, rather than the balance still owed under the original terms of the contract. Plaintiffs filed their action against defendants in December 1987.

At some point after this, defendants having refused to conclude the sale and transfer to plaintiffs title to the property, plaintiffs apparently stopped making payments on the notes secured by the first and second deeds of trust, and the defendants, too, apparently did not continue to make the payments.[5] In the summer of 1992, the property was foreclosed upon and sold at a trustee's sale before trial of this action in January 1993, and the sales proceeds of approximately $29,000 were held by the trustee.

IV

DISCUSSION

A. *Plaintiffs Did Not Waive Their Claim for Equitable Relief as Equitable Owners of the Property, and Thus the Trial Court Did Not Err by Awarding Them a Portion of the Sales Proceeds*

 Defendants first assert that the "[r]emedies for breach of contract and specific performance are inconsistent so that a plaintiff cannot receive both." This assertion is, in part, an inaccurate statement of the law. As noted earlier in footnote 2, specific performance and damages are separate remedies for breach of contract. However, defendants are partly correct when they state that plaintiffs cannot receive both specific performance and damages for breach of contract. A plaintiff can request such alternate remedies for equitable relief or legal damages in her or his complaint (see 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 356, 357, at pp. 411-413), but may not be awarded both to the extent such an award would constitute a double recovery, e.g., a plaintiff/purchaser of real property cannot receive both the property itself by a specific performance decree and also damages measured by payments he or she made towards the purchase price.

However, plaintiffs may recover both the property itself, through the remedy of specific performance, and additional compensation, sometimes

---

[5]No evidence as to this was presented at trial; however, everyone agreed that the property had been foreclosed upon, as to either the first or second deeds of trust or both. Consequently, a reasonable inference from the record is that timely installment payments on either or both trust deeds had been discontinued.

incorrectly referred to as "damages," when such compensation is necessary to fully vindicate the plaintiffs' contractual rights. (See, e.g., *Greenstone* v. *Claretian Theo. Seminary* (1959) 173 Cal.App.2d 21, 29 [343 P.2d 161], in which the plaintiff was awarded such "damages" in the form of rents and profits lost during the time the defendants wrongfully refused to convey the property; 81A C.J.S. (1977) Specific Performance, §§ 197, 198, 199, pp. 159-172.)

As was stated in *BD Inns* v. *Pooley* (1990) 218 Cal.App.3d 289 [266 Cal.Rptr. 815]: "'In California the compensation which may be awarded incident to a decree of specific performance is not for breach of contract and is not legal damages. The complainant affirms the contract and asks that it be performed. Since the time for performance has passed, the court relates that performance back to that date, by treating the parties as if the change in ownership had taken place at that time. Thus the buyer is entitled to the rents and profits from the time the contract should have been performed, and the seller is entitled to an offset for the interest on the purchase money which he would have received had the contract been performed. The process is more like an accounting between the parties than an assessment of damages. [Citations.]' (*Hutton* v. *Gliksberg* (1982) 128 Cal.App.3d 240, 248 [180 Cal.Rptr. 141].)" (*Id.* at pp. 298-299.)

Defendants also contend that if a contract has become unenforceable, specific performance is not appropriate because its enforcement would be impossible, citing *Crittenden* v. *Hansen* (1943) 59 Cal.App.2d 56, 58-59 [138 P.2d 37].) The unspoken assumption by defendants is that specific performance would be impossible in this case, because the foreclosure sale resulted in the property being conveyed to bona fide third party purchasers. However, as is apparent when the authorities on which *Crittenden* relied are analyzed, defendants have misconstrued the nature and scope of this remedy.

In *Crittenden*, the defendant had conveyed title to the real property in question to bona fide purchasers, thus making specific performance impossible. The court in *Crittenden* cited several authorities, including the Restatement of Contracts (First) section 368, for the proposition that specific performance is unavailable when its enforcement is impossible. Section 368 provides, in relevant part, that "Specific enforcement will not be decreed if the performance sought is impossible, or is tortious or criminal, or is in violation of the rights of a third person which are superior to those of the plaintiff." (See also Rest.2d Contracts, § 365 and coms. thereto, pp. 180-190.)

However, section 359, subdivision (2) of the Restatement of Contracts (First) provides, in relevant part, that a "decree [of specific performance] need not be absolute in form, and the performance that it requires

need not be identical with that promised in the contract; it may be so drawn as best to effectuate the purposes for which the contract was made, and it may be granted on such terms and conditions as justice requires." Comments *c* and *d* to section 359, subdivision (2) state, in relevant part: "The exact performance that is promised in a contract may be, in part or in whole, very difficult of enforcement, it may have become impossible or unlawful, and it may be such that exact enforcement would work unreasonable hardship. The court may nevertheless be able to achieve substantially the same result without undue difficulty, without hardship to the defendant, and without violation of law or of the rights of third persons. In such cases the decree may be so drawn as best to achieve this result. It may command a performance by the defendant that is not identical with that which he promised to perform; . . . [¶] There are circumstances under which the court has power, by virtue of its own decree and without commanding any performance at all, to create substantially the same legal effect that the promised performance would have created. . . ." (Rest. (1st) Contracts, § 359, subd. (2), *coms. c, d,* pp. 639-640; see also Rest.2d Contracts, § 358 and coms. thereto, pp. 166-168.)

Thus, *Crittenden*'s statement, that specific performance is not appropriate when its enforcement would be impossible, was overly broad based on the limited facts of that case. In its factual context it meant no more than that it could not order conveyance of title to the plaintiffs, not that some other form of specific performance could not be ordered.

Defendants additionally contend that at trial plaintiffs "abandoned their cause of action" for specific performance. Not so. Plaintiffs agreed that it would be impossible to specifically enforce a sale of the property, but indicated their intent to prove both the existence of the contract and all of the elements which would have been required for specific performance, so as to prove their entitlement to the remaining proceeds from the foreclosure sale of the property, after the beneficiaries of the deeds of trust had been recompensed. Defendants understood that "[w]hat he's [plaintiffs' attorney] trying to do is say that [the sales proceeds] was really the house and he wants specific performance for the [sale proceeds] when under the code for breach of contract, 3306 of the Civil Code, he can only get the difference of the value between the worth of the house and the purchase, agreed-to-purchase price."

■ It is apparent that plaintiffs' insistence on proving their right to specific performance was premised on the principle that "[a]n unconditional contract for the sale of land, of which specific performance would be decreed, grants the purchaser equitable title, and equity considers him the owner. (1 Tiffany on Real Property [3d ed.], § 307, p. 528; 2 Pomeroy's

Equity Jurisprudence [5th ed.], § 372, p. 33; *Estate of Dwyer*, 159 Cal. 664, 675 [115 P. 235].)" (*Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157, 166 [272 P.2d 16]; see also *Mamula* v. *McCulloch* (1969) 275 Cal.App.2d 184, 193-194 [79 Cal.Rptr. 571]; *S. R. A., Inc.* v. *Minnesota* (1946) 327 U.S. 558, 565 [90 L.Ed. 851, 857, 66 S.Ct. 749, 754].)

 Here, as the equitable owners of the property at the time of the foreclosure sale,[6] plaintiffs would be entitled, in equity, to the sales proceeds under the doctrine of equitable conversion. (See, e.g., *Cinmark Investment Co.* v. *Reichard* (1966) 246 Cal.App.2d 498, 503 [54 Cal.Rptr. 810], citing with approval *Cullen & Vaughn Co.* v. *Bender Co.* (1930) 122 Ohio St. 82 [170 N.E. 633, 68 A.L.R. 1332].)

In *Cullen & Vaughn Co., supra,* a lessee had an option to purchase, for a stated price, the leased property at any time during the lease period. During the lease period, part of the property was condemned, and the lessor was given just compensation therefor. The lessee exercised its option to purchase the remaining property, and claimed that it was entitled to a credit against the stated price in an amount equal to the compensation received by the lessor. The court agreed, concluding that "[t]he doctrine of equitable conversion applies. It no longer being possible to convey the entire property, the fund which represents the part conveyed belongs to the lessee, as purchaser." (170 N.E. at p. 637.)

Although the facts of this case, involving loss of the property through a foreclosure sale with a portion of the sales proceeds remaining after payment of the trust deed beneficiaries, are not directly on point with any other cases involving equitable conversion which we have found, "California recognizes that: 'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' [Citation.]" (*Bisno* v. *Sax* (1959) 175 Cal.App.2d 714, 728 [346 P.2d 814].) In our opinion, this is such a situation.

In summary, plaintiffs here did not waive or abandon their right to seek specific performance as a remedy for defendants' breach of the contract.

---

[6]Although defendants asserted as an issue that the court incorrectly found that plaintiffs were equitable owners of the property at the time of the foreclosure sale, they do not urge such a proposition in their argument. They seemingly concede that plaintiffs were such owners, but earnestly argue that at time of trial plaintiffs had waived or abandoned the equitable remedy of specific performance by failing to timely pay on the first and second deeds of trust. Thus, they allowed the property to be foreclosed and sold to third parties, thereby making impossible any decree of specific performance that defendants convey the property to plaintiffs.

They had requested such remedy in their complaint and advanced it at trial as to the proceeds deriving from the foreclosure sale. Furthermore, the fact that the property had been foreclosed upon, thus making it impossible for plaintiffs to obtain a decree of specific performance of the property itself, did not prevent the trial court from applying the doctrine of equitable conversion and concluding that a change of ownership had taken place at the time that plaintiffs had opened escrow and were ready, willing and able to complete their obligations as purchasers under the contract, and defendants had refused to enter escrow and transfer title to plaintiffs before the foreclosure. (*BD Inns* v. *Pooley, supra,* 218 Cal.App.3d at pp. 298-299.)

In our view, the court correctly found plaintiffs to have been equitable owners of the property at the time of the foreclosure sale, and its judgment properly and fairly fashioned equitable relief "to create substantially the same legal effects that the promised performance would have created" (Rest. (1st) Contracts, § 359, subd. (2), *com. d,* p. 640), i.e., a judgment which gave plaintiffs the benefit of the equity in the property, i.e., the sales proceeds, while also awarding defendants the balance owed on the contract, i.e., $9,460. (*Hutton* v. *Gliksberg, supra,* 128 Cal.App.3d 240, 248.)

B. *Defendants Are Not Entitled to an Offset Against the Sales Proceeds for Reasonable Rental Value of the Property During the Period Plaintiffs Occupied It*

■ Defendants contend that the evidence showed that the reasonable rental value of the property was $600 per month, that plaintiffs paid only $396 per month on the first trust deed note from May 1979 until April 1990, and that they were therefore entitled to a setoff against the sales proceeds in the amount of the reasonable rental value. They cite *Romero* v. *Rainey* (1955) 138 Cal.App.2d 139, 141 [291 P.2d 38] for this proposition.[7] However, in *Romero* v. *Rainey,* the plaintiff buyers sued for money damages for breach of contract to convey realty. They did not seek specific performance. The buyers, who had occupied the property which was the subject of the contract while waiting for the defendant sellers to convey title, had made numerous installment payments on the purchase price, and after defendants wrongfully refused to convey the property, the buyers sought return of all such payments, plus interest thereon, in a common count action for money had and received. (138 Cal.App.2d at p. 141.) In such a case, when the buyers were awarded such sums, it was fair to set off the reasonable rental

---

[7]Defendants also assert that plaintiffs resided on the property for two years without making any type of payments. However, they do not point to any evidence in the record supporting this assertion. Furthermore, defendants do not tie this contention to any particular legal argument or assignment of error.

value of the property during the buyers' occupancy for the benefit of the defendant sellers.

Here, in contrast, plaintiffs did not seek to set aside the contract and recover the monies they had paid toward the purchase price; instead, at trial they sought to affirm the contract and to obtain the benefit of that bargain, i.e., the equity which in part they had established in the property by their improvements to it and payments on the trust deeds. As equitable owners of the property under the contract, they were not liable to pay rent to defendants, just as defendants were not liable to plaintiffs for the return of the payments on the purchase price. *Romero* v. *Rainey* is therefore entirely inapplicable. (See *Christensen* v. *Slawter* (1959) 173 Cal.App.2d 325, 332, fn. 2 [343 P.2d 341, 74 A.L.R.2d 567].) Thus, the trial court did not err by refusing to award defendants a credit or setoff against the sales proceeds for the property's reasonable rental value while plaintiffs occupied it.[8]

## V

### DISPOSITION

The judgment is affirmed.

Mckinster, J., and McDaniel, J.,* concurred.

---

[8]In defendants' reply brief they, for the first time, make the contention that, assuming the court had equitable jurisdiction of the action, plaintiffs did not carry their burden of proving that the remedy at law, i.e., legal damages, was not adequate. Defendants have not shown good cause for their failure to present this claim earlier. We, therefore, will not consider it. (*American Drug Stores, Inc.* v. *Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432]; see *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].)

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.