THE POWHATAN STEAMBOAT COMPANY, PLAINTIFFS IN ERROR, *v.* THE APPOMATTOX RAILROAD COMPANY.

In the code of Virginia, chapter 196, are the following sections, viz:

" SEC. 15. If a free person, on a Sabbath day, be found laboring at any trade or calling, or employ his apprentices, servants, or slaves, in labor or other business, except in household or other work of necessity or charity, he shall forfeit $10 for each offence; every day any servant, apprentice, or slave, is so employed, constituting a distinct offence.

SEC. 17. No forfeiture shall be incurred under the preceding section for the transportation on Sunday of the mail, or of passengers and their baggage. And the said forfeiture shall not be incurred by any person who conscientiously believes that the seventh day of the week ought to be observed as a Sabbath, and actually refrains from all secular business and labor on that day; provided he does not compel a slave, apprentice, or servant, not of his belief,

to do secular work or business on Sunday, and does not, on that day, disturb any other person."

The acts prohibited by these sections are no doubt unlawful, but the following case does not fall within their operation.

The Powhatan Steamboat Company were the owners of a line of steamers employed in the transportation of goods from Baltimore to Richmond, stopping at City Point to deliver goods, which were to be carried thence to Petersburg by the Appomattox Railroad Company. The steamboat company gave receipts for the goods when shipped, undertaking to deliver them at Petersburg, paying the railroad company a portion of the freight.

Leaving Baltimore on Saturday, one of the steamers arrived at City Point on Sunday morning and delivered the goods intended for Petersburg, which were received and locked up in a warehouse, belonging to the railroad company, to remain until the next day. But in the after part of the day, the warehouse and goods were destroyed by fire. The steamboat company were sued by the shippers and compelled to pay the value of the goods, to recoup which they now sued the railroad company.

The instructions of the court below to the jury were erroneous, viz: that if they found that the goods were delivered on a Sunday, under a contract between the parties, express or implied, that they might be received and accepted on that day, and were destroyed by fire on the day on which they were delivered and received, their verdict should be for the defendants.

The steamboat company and railroad company each worked for themselves. The railroad company, having received the goods into their warehouse, were bound to keep them in safe custody, as carriers for hire, although they could not transport them to Petersburg until the next day. To take care of them on the Sabbath day was a work of necessity, and therefore not unlawful.

The cause of action in this case is not founded upon any executory promise between the parties, touching either the landing and depositing of the goods or the opening or closing of the warehouse, but it is based upon the non performance of the duty which arose after those acts had been performed.

If the action was one to recover a compensation for the labor of landing and depositing the goods, or to recover damages for refusal to comply with the agreement to open and close the warehouse, the rule of law invoked by the defendants would apply.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Virginia.

The nature of the case and rulings of the court below are fully explained in the opinion of the court.

It was argued by *Mr. Schley*, upon a brief submitted by himself and *Mr. Jaynes*, for the plaintiffs in error, and by *Mr. Robinson* for the defendants.

The arguments upon both sides contained examinations of the cases in this country and England with respect to the operation of Sunday laws; but the opinion of the court being that this case does not come within the scope of the Virginia code, the insertion of these arguments is not considered necessary. It will be seen that the court consider the transaction between the two companies as having been closed by the reception of the goods by the railroad company; after which period it became their duty to keep them safely, which did not amount to a violation of the Virginia code.

Mr. Justice CLIFFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the eastern district of Virginia. All of the questions presented for decision in this case arise upon the instructions given by the court to the jury, but a brief reference to the pleadings and evidence will be necessary, in order that the precise nature of those questions may be clearly and fully understood.

It was an action on the case, and the declaration contained three counts, which are set forth at large in the transcript. Among other things, the plaintiffs alleged, in the first count, that the defendants were common carriers for hire; that they, the plaintiffs, at the special instance and request of the defendants, on the twenty-sixth day of June, 1853, at City Point, in the State of Virginia, caused certain goods and merchandise to be delivered to the defendants, as such carriers, to be by them transported from the place of delivery to Petersburg, in the same State; and that the defendants, in consideration thereof, and of certain hire and reward to be paid them therefor, undertook and promised safely and securely to carry and convey the goods and merchandise to the place of destination, and there to deliver the same; and the complaint is, that the defendants, not regarding their promise and undertaking in that behalf, so conducted themselves, as such carriers, that the goods and merchandise, through their negligence and carelessness, were wholly lost to the plaintiffs. To the whole declaration the defendants pleaded that they never undertook

and promised as the plaintiffs had thereof alleged against them, and upon that issue the parties went to trial.

From the evidence in the case, it substantially appears that the plaintiffs were the owners of a weekly line of steamers, employed in the regular and stated transportation of goods and merchandise between the city of Baltimore, in the State of Maryland, and the city of Richmond, in the State of Virginia. Their steamboats, on the trip each way, were accustomed to stop at the intermediate place called City Point, on James river, for the purpose of landing goods to be sent to Petersburg, and also for the purpose of receiving other goods arriving from the same place to be transported to either terminus of the steamboat route. Defendants were a railroad company, and were also engaged in the transportation of goods and merchandise over their railroad, extending from City Point to Petersburg, in the same State. For many years there had been an arrangement and contract between the parties, whereby goods and merchandise destined for transportation to the latter place were to be received by the plaintiffs in Baltimore, carried in their steamers to City Point, and there delivered to the defendants, to be by them transported over their railroad to the place of destination. Receipts for the goods were given by the plaintiffs in Baltimore, promising to deliver the same to the consignees at Petersburg, where the plaintiffs had an agent, who collected the entire freight money, and paid over one-fourth part of the amount to the defendants. When the steamers arrived at City Point, the goods were landed, and deposited in the warehouse of the defendants, which was situated on the wharf adjacent to the railroad.

According to the regular course of the transportation, one of the steamboats of the plaintiffs left Baltimore every Saturday afternoon, arrived at City Point about noon on Sunday, and there such of her cargo as was destined for Petersburg was landed and deposited in the warehouse of the defendants, and the steamer on the same day proceeded on her voyage to the place of her destination. Goods so landed and deposited remained in the warehouse until the following day, because the defendants run no merchandise train on Sundays. Usually

the warehouse was opened on the occasion, and afterwards closed by the agent of the defendants; but the whole labor of landing and depositing the goods, except the opening and closing of the warehouse, was performed by the plaintiffs.

Pursuant to the regular course of the transportation, one of the steamers of the plaintiffs arrived at City Point on Sunday, the twenty-sixth day of June, 1853, about noon, with the goods in controversy on board. On the arrival of the steamer at the wharf, the goods, being destined for Petersburg, were landed and deposited in the warehouse, and the evidence shows that the whole labor of landing and depositing them was performed by the plaintiffs, except that the agent of the defendants unlocked and opened the warehouse for that purpose, and afterwards closed it, as he had been accustomed to do on former occasions. After the goods had been so deposited, the steamer proceeded on her voyage up the river, and on the same day the warehouse and all the goods were destroyed by fire. Suit was brought against these plaintiffs by the shipper of the goods, and payment was recovered against them for a sum exceeding twelve thousand dollars, which they had to pay. Evidence was then introduced by the defendants, tending to show that the goods were deposited in their warehouse for the convenience and accommodation of the plaintiffs, upon the agreement and understanding that the goods should remain there until the following morning, and be at the risk of the plaintiffs. Under the instructions of the court, the jury returned their verdict in favor of the defendants, and the plaintiffs excepted to the instruction. It is to the concluding portion only of the instruction that the plaintiffs now object, and for that reason the preceding part of it is omitted. Having assumed that state of the case in the introductory part of the instruction—which the evidence adduced by the plaintiffs tended to prove, and which, if found to be true, and the goods had been deposited on an ordinary working day, would have entitled the plaintiffs to recover—the jury were substantially told by the presiding justice, in the concluding portion of the instruction, that notwithstanding the facts so assumed, still, if they found from the evidence that the goods were delivered

on a Sunday, under a contract between the parties, express or implied, that they might be received and accepted on that day, and were destroyed by fire on the day on which they were delivered and received, to wit, on Sunday, the twenty-sixth day of June, 1853, then their verdict should be for the defendants. Had the goods arrived and been deposited in the warehouse on an ordinary working day, the preceding part of the instruction assumed that the evidence in the case would authorize a finding in favor of the plaintiffs, and the principal question is, whether the rights of the parties were varied by the fact that the goods were landed and deposited on a Sunday. It is insisted by the defendants that it does vary their rights, especially as the goods were destroyed accidentally on the day they were delivered and received. To support that theory, they refer, in the first place, to the sixteenth and seventeenth sections of the code of Virginia. By the sixteenth section it is provided, among other things, that "if a free person on a Sabbath day be found laboring at any trade or calling, or employ his apprentices, servants, or slaves, in labor or other business, except in household or other work of necessity or charity, he shall forfeit ten dollars for each offence;" and by the seventeenth section it is provided, that no forfeiture shall be incurred under the preceding section for the transporting on Sunday of the mail, or of passengers and their baggage. Most of the States have laws forbidding any worldly labor or business within their jurisdiction on the Lord's day, commonly called Sunday, except works of necessity or charity. Those laws were borrowed substantially from similar regulations in the parent country, and in some of the States were adopted at a very early period in the history of the Colonial Governments. Statutes of the description mentioned usually contain an express prohibition against such labor; but we are inclined to adopt the early rule upon the subject, that where the statute inflicts a penalty for doing an act, although the act itself is not expressly prohibited, yet to do the act is unlawful, because it cannot be supposed that the Legislature intended that a penalty should be inflicted for a lawful act. Adopting that rule of construction, it must be assumed that all labor " at any

trade or calling on a Sabbath day, except in household or other work of necessity or charity," is prohibited in the State of Virginia by the sixteenth section of the code already cited. But the defendants do not attempt to maintain that the contract between the plaintiffs and the shipper of the goods, for the transportation of the same from Baltimore to Petersburg, falls within that implied prohibition, or that the voyage of the steamer from Baltimore to Richmond was illegal. As the evidence shows, the steamer left Baltimore on Saturday, the day previous to the fire which consumed the warehouse and the goods, and it is very properly conceded by the defendants that she might lawfully, under the circumstances, proceed on her voyage to her place of destination, notwithstanding the fact that, in so doing, she had to sail on "a Sabbath day;" and if so, it clearly follows that she might stop at any intermediate place on the route. Transportation of the goods, therefore, so far as they were carried in the steamer, was a lawful act, and, in effect, it is conceded to have been so by the defendants. Merchandise trains were not run by the defendants on Sundays; and, of course, neither the contract of the shipper nor the arrangement between these parties contemplated that the goods would be carried over the railroad on that day. Shippers made their contracts with the plaintiffs for the transportation of the goods over the whole route, from the place of departure to the place of destination, wholly irrespective of the circumstances which might afterwards attend the transfer of the goods from the steamer to the defendants, and without any knowledge, so far as appears, whether it would be accomplished on a Sunday, or on an ordinary working day.

When the shipper had delivered the goods to the plaintiffs, the contract between him and them was completed, and it is self-evident that it was one to which the Sunday laws of Virginia have no application whatever. All such contracts were made by the plaintiffs, but they were made for the separate benefit of the defendants, as well as themselves, and the arrangement between these parties had respect to the apportionment of the service to be performed in carrying out the contract made with the shipper, and the division of the freight

money to be received for the entire service. Each party worked for himself, and not for the other, and the compensation for that service was to be derived from the shipper of the goods. Neither party promised to pay the other anything, but each was to receive a proportion of the freight money equal to the proportion of the service the arrangement between the parties required him to perform. Plaintiffs made the contract with the shippers in their own name, received the goods at Baltimore, transported them to City Point, and on the arrival of the steamer there, landed the goods and deposited them in the warehouse of the defendants. On the other hand, the defendants furnished the warehouse, opened and closed it on the occasion, took the custody of the goods until the following morning, and then transported them over the railroad to the place of destination, and delivered them to the consignees. After the goods were delivered to the consignees, the agent of the plaintiffs collected the entire freight money, and paid over to the defendants such portion of it as belonged to them under the arrangement. Merchants sending goods knew only the plaintiffs in the entire transportation; but, as between these parties, each performed a separate service for himself, and had no other claim for compensation than his proportion of freight money. Had the goods been lost at sea through the negligence of the plaintiffs, it is clear that the defendants would not have been answerable either to the shippers or to the plaintiffs, because the defendants had no interest in the steamer, and the arrangement between the parties did not contemplate that they should be responsible for her navigation. Shippers, however, had a right to proceed against the plaintiffs, although the loss had occurred while the goods were in the custody of the defendants, because their contract with the plaintiffs covered the whole route; and as between them and the defendants, the latter were but the agents of the plaintiffs. Accordingly, the shippers recovered judgment against the plaintiffs, and clearly the defendants are answerable over, unless it is shown that the case is one where courts of justice will not interfere to enforce the contract. It is insisted by the plaintiffs that the labor of landing and depositing

the goods was a work of necessity, within the meaning of the exception contained in the statute; but in the view we have taken of the case, it will not be necessary to decide that question at the present time..

Suppose it be admitted that the plaintiffs violated the Sunday law in landing the goods and depositing them, and that defendants also violated the same law in opening and closing the warehouse on the occasion; still the admission will not benefit the defendants, for the reason that the cause of action in this case is not founded upon any executory promise between the parties, touching either the landing and depositing of the goods or the opening and closing of the warehouse, but it is based upon the non-performance of the duty which arose after those acts had been performed. If the action was one to recover a compensation for the labor of landing and depositing the goods, or to recover damages for a refusal to comply with the agreement to open and close the warehouse, the rule of law invoked by the defendants would apply. Granting, however, for the sake of the argument, that those acts of labor fall within the prohibition of the statute, still their performance did not have the effect to transfer the general property in the goods to the defendants, nor to release or discharge them from the subsequent obligations which devolved upon them as common carriers for hire. Safe custody is as much the duty of the carrier as due transport and right delivery; and although the defendants were forbidden to transport the goods over the railroad, or to deliver the same on "a Sabbath day," yet they might safely and securely keep such as were in their custody, and it was their duty so to do. Irrespective of the Sunday law, the plaintiffs could maintain no action against the defendants for the service they had performed in landing and depositing the goods, for the best of all reasons, that in performing it they had worked for themselves, and not for the defendants. Nothing, therefore, can be more certain than the fact that the claim in this case is not founded upon any executory promise necessarily connected with those supposed illegal acts. On the contrary, the real claim is grounded on the obligations which the law imposed

on the defendants safely and securely to keep, convey, and deliver the goods, and upon their subsequent negligence and carelessness, whereby the goods were lost. To take care of the goods on "a Sabbath day," and safely and securely keep them, after the goods were received, was a work of necessity, and therefore was not unlawful, even on the theory assumed by the defendants, and the defendants were not expected to convey or deliver the goods until the following day. On the theory assumed, the defendants might have refused to open the warehouse, or to allow the goods to be deposited; and if they had done so, no action could have been maintained against them for the refusal. But they elected to do otherwise, and suffered the plaintiffs to deposit the goods; and when the warehouse was closed, all the supposed illegal acts were fully performed.

Whatever contract or arrangement existed between the parties upon that subject had then been fully executed, and those who had been employed in landing and depositing the goods, as well as the agent of the defendants, who had opened and closed the warehouse, if the acts were illegal, had respectively become liable to the penalty which the law inflicts for such a violation of its mandate. That penalty is a fine of ten dollars; but there is no authority in any court to declare the goods forfeited, nor do we perceive any just ground for holding that the general property in the goods was thereby changed. Unless the goods be considered as forfeited, or it be held that the property became vested in the defendants, it is difficult to see any reason why the plaintiffs ought not to recover in this suit, even admitting that the acts of landing and depositing the goods, and of opening and closing the warehouse, were within the prohibition of the statute.

Subsequent custody of the goods was certainly not within that prohibition; and if not, then the law imposed the obligation upon the defendants to keep the goods safely and securely until the following morning, and afterwards to transport them over the railroad to the place of destination, and deliver them to the consignees. To assume the contrary, would be to admit that a carrier, accepting goods to be trans-

ported on an ordinary working day, may set off the fact that the labor of depositing the goods in his warehouse was performed on "a Sabbath day," against all the subsequent obligations which the law would otherwise impose upon him with respect to the goods. Such a rule of law, if acknowledged by courts of justice, and carried into effect, would amount to a forfeiture of the goods, so far as the shipper is concerned, as its practical operation would be to allow the carrier, if he saw fit, voluntarily to destroy the goods, or to appropriate them to his own use.

Upon a careful examination of the numerous authorities bearing upon the question, the better opinion, we think, is, that inasmuch as the subsequent custody of the goods was not unlawful, that the obligations of the defendants, under the circumstances of this case, were not varied by the fact that the goods were deposited in their warehouse by their consent on "a Sabbath day." Great injustice would result from any different rule, and' although the precise question has seldom or never been presented for decision, yet we think the analogies of the law fully sustain the rule here laid down. For these reasons we are of the opinion that the instruction given to the jury was erroneous. The judgment of the Circuit Court is therefore reversed, and the cause remanded, with directions to issue a new venire.