**TOKIO MARINE & FIRE INSURANCE CO., LTD., a corporation, Plaintiff,**

v.

**Nippon Yusen KAISHA dba NYK Line, a corporation; NYK Line (North America) Inc., a corporation; Southern Pacific Transportation, a corporation; K & R Transportation, a division of Cal Cartage, Inc., a corporation, Defendants.**

**No. CV 96–4356 LGB (VAPx).**

United States District Court, C.D. California.

June 3, 1997.

Dennis A. Cammarano, Dennis A. Cammarano Law Offices, Long Beach, CA, for plaintiff.

Michael L. Swain, Swain & Dipolito, Long Beach, CA, for NYK Line (North America) Inc, defendant.

Michael L. Whitcomb, Nancy W. Carman, Union Pacific Railroad Company, Monterey Park, CA, Barry N. Gutterman, Barry N. Gutterman & Associates, New York City, for So. Pac. Trans., defendant.

## ORDER RE SOUTHERN PACIFIC'S MOTION FOR SUMMARY JUDGMENT AND NYK'S MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

## I. INTRODUCTION

Defendant and Cross–Defendant Southern Pacific's Transportation's Motion for Summary Judgment, and Defendants and Cross–Claimants Nippon Yusen Kaisha dba NYK Line's and NYK Line (North America) Inc.'s (collectively "NYK") Motion for Partial Summary Judgment Against Defendant and Cross–Defendant SP came on regularly for hearing on June 2, 1997. Having carefully considered the papers submitted and oral argument of counsel, the Court hereby:

(1) GRANTS defendant and cross-defendant SP's Motion for Summary Judgment against plaintiff Tokio Marine & Fire Ins. Co., Ltd. ("Tokio").

(2) DENIES defendant and cross-defendant SP's Motion for Summary Judgment against defendant and cross-complainant NYK.

(3) DENIES defendant and cross-complainant NYK's Motion for Summary Judgment against defendant and cross-defendant SP.

## II. PROCEDURAL BACKGROUND

Plaintiff Tokio filed its original complaint in Los Angeles County Superior Court on May 9, 1996, against defendant NYK Line (North America) Inc. The Complaint alleged causes of action for: (1) non-delivery of cargo; (2) negligence; (3) breach of contract; and (4) breach of bailment.

Defendant NYK Line (North America) Inc. removed to this Court on June 20, 1996, based on diversity. On August 20, 1996, the parties stipulated to allow Tokio to amend the complaint, and the First Amended Complaint was filed. The First Amended Complaint added three new defendants: Nippon Yusen Kaisha dba NYK Line, SP and K & R Transportation ("K & R").

On September 11, 1996, defendant NYK answered the First Amended Complaint and filed a Cross–Claim against SP and K & R for indemnity and/or contribution. On November 13, 1996, this Court denied defendant and cross-defendant K & R's motions to dismiss both Tokio's First Amended Complaint and NYK's Cross–Claim.[1]

Currently before the Court are the following two motions:

(1) Defendant and cross-defendant SP's Motion for Summary Judgment, filed on April 28, 1997. Plaintiff Tokio filed a timely Opposition on May 5, 1997, and defendant and cross-claimant NYK also filed a timely Opposition on May 5, 1997. SP filed timely Replies on May 12, 1997; and

(2) Defendant and cross-claimant NYK's Motion for Partial Summary Judgment against defendant and cross-defendant Southern Pacific. Defendant and cross-defendant SP filed a timely Opposition on May 5, 1997. Defendant and cross-claimant NYK filed a timely Reply on May 12, 1997.

## III. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise stated:

This case involves alleged freezing damage to a shipment of foodstuffs moving from To-

---

1. NYK asserts that K & R has settled with plaintiff Tokio and cross-claimant NYK, and is therefore no longer an active party in this case. However, no dismissal has been filed with the Court.

kyo, Japan to Chicago, Illinois via Los Angeles, California. (1st Amend. Compl. ¶¶ 7, 8; SP's Fact No. 1.) Plaintiff Tokio is an insurance corporation who insured certain cargo for JFC International ("JFC"), the consignee of the goods. (1st Amend.Compl.¶ 3.) Plaintiff paid JFC for the loss of the cargo, and is now subrogated to the rights of JFC up to the amount of that payment. (1st Amend. Compl.¶ 3.) NYK is an ocean carrier which carried the goods by sea from Tokyo to the Port of Los Angeles, then K & R carried the goods by truck from the Port of Los Angeles to Carson, California, then, finally, SPT carried the goods by rail from Carson, California to Chicago, Illinois.

### A. Facts Relevant to SP's Motion for Summary Judgment

A through bill of lading, which governs the shipment from origin to destination, was issued by NYK for the subject shipment. (SP's Facts Nos. 2, 5; Tokio's Facts Nos. 2, 5; NYK's Facts No. 2, 5.) There was only one bill of lading, which governs the shipment from origin to destination, issued for the subject shipment. (SP's Facts No. 3.) The following provisions of the bill of lading are relevant to the instant case.

Initially, the bill of lading states that:

In accepting this Bill of Lading, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, whether written, typed, stamped or printed, as fully as if signed by the Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all agreements or freight engagements for and in connection with the carriage of the Goods are superseded by this Bill of Lading.

(Matthey Decl., Exh. A.) The bill of lading sets forth the following definitions:

(a) "Carrier" means Nippon Yusen Kaisha and the Vessel and or her owner.

. . .

(e) "Sub–Contractor" includes owner and operators of Vessel (other than the Carrier), stevedores, terminal operators, warehousemen, road and rail transport operators and any independent contractor employed by the Carrier in performance of the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

(Matthey Decl., Exh. A.)

The bill of lading also includes what is commonly termed a "Himalaya Clause." This Himalaya Clause enumerates "Exemptions and Immunities of Agents, Servants, Representatives and Sub–Contractors of the Carrier" providing that:

The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

Every such agent, servant, representative or Sub–Contractor shall be entitled to the benefit of each and every defense, privilege, right, exemption, limitation, immunity, liberty and condition contained herein for the benefit of the Carrier, including without limitation, the limitation of liability provision in Article 28, as if such provisions were expressly for their benefit, and in entering into this contract the Carrier, to the extent of those provisions, does so not only on his own behalf but also as agent and trustee for such agents, servants, representatives and Sub–Contractors.

(Matthey Decl., Exh. A.)

The bill of lading also contains provisions regarding "Notice of Claim and Time for Suit." These provisions provide that:

(1) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage be not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading.

(2) In any event the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after delivery of the Goods

or the date when the Goods should have been delivered.

(Matthey Decl., Exh. A.)

SP was engaged to provide inland rail transportation of the subject container from Long Beach, California to Chicago, Illinois by Centennial Express Corporation ("Centex"). (Matthey Decl. ¶ 15.) Centex is a wholly owned subsidiary of NYK (U.S.A.) Inc., and acts as NYK's agent in arranging for rail transportation for goods covered by the NYK bill of lading. (Tsagaris Decl. ¶ 3.)

The subject shipment was delivered to the consignee in May of 1994. (SP's Fact No. 21.) The within lawsuit was initially filed on May 9, 1996, more than one year following delivery of the subject shipment. (SP's Fact No. 12.)

### B. Facts Relevant to NYK's Motion for Summary Judgment

NYK issued a through bill of lading to plaintiff's assured for the carriage of goods from Tokyo, Japan to Chicago Illinois, therefore NYK is the carrier and SP is a subcontractor of NYK under the terms of the bill of lading. (N.Y.K's Facts Nos. 1–3.)

SP's waybill for the rail transport of plaintiff's assured's goods reads as follows:

C/L FOODSTUFFS

MAINTAIN TEMP AT 41 DEGREES FAHRENHEIT

MECH PROTECTIVE SVC—NON FROZEN

COMMODITY; OPTIMUM TEMP INSIDE TLR 41 DEGS

(N.Y.K Fact No. 4.) SP received the container at Long Beach, California for rail carriage to Chicago. At the time it received the subject container the temperature setting on the reefer container was +41 degrees F (equivalent to +5 degrees C). (N.Y.K's Fact No. 5; SP's Fact No. 5.)

2. NYK asserted at oral argument that it disputes SP's facts regarding PFE and the nature of the relationship between NYK and PFE.

3. SP asserts that this fact is disputed because Matthey did not conduct an independent investigation as to where the loss occurred. (SP's Fact

Pacific Fruit Express ("PFE") is a company that NYK hired to provide temperature protective services during inland rail transportation of the container.[2] (SP's Facts Nos. 7, 11.) PFE was not operating under a contract with SP with respect to the provision of protective services, and PFE billed NYK only for the services it provided. (SP's Facts Nos. 12, 17.)

According to the records of PFE, the temperature setting of the container at Tucson, Arizona was −5 degrees C. (Swain Decl., Exh. A at 69–71 & Exhs. 19–21.) The temperature setting at El Paso, Texas was +5 degrees C. (Swain Decl., Exh. A at 69–71 & Exhs. 19–21.) The temperature setting at Kansas City, Kansas was −20 degrees C. (N.Y.K's Fact No. 6; SP's Fact No. 6.) Upon its arrival in Chicago, Illinois the temperature setting was −14 degrees C. (SP's Fact No. 6.) Plaintiff alleges that the goods were delivered to the consignee at Chicago, Illinois in freeze damaged condition. (N.Y.K's Fact No. 8.) Southern Pacific's Manager of Intermodal Freight Claims testified that based on his review of the file and his 30 years experience at SP, the freezing of the container occurred sometime between Los Angeles, California and Chicago, Illinois. (N.Y.K's Fact No. 9.)[3]

## IV. ANALYSIS

### A. Legal Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that

No. 9.) However, the fact that Matthey did not conduct an investigation does not prohibit him from offering testimony, after a proper foundation is laid, as to his opinion based on review of the file.

no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). Furthermore, if the moving party has the burden of proof at trial, that party must establish peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

■ If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. 2505.

### B. Analysis of Defendant and Cross–Defendant SP's Motion for Summary Judgment

Defendant and cross-defendant SP bases its Motion for Summary Judgment against plaintiff Tokio and against defendant and cross-complainant NYK on two alternative grounds. First, SP asserts that the terms and conditions of the bill of lading issued by NYK required that suit be instituted within one year. Second, SP argues that its Governing Publication, SP Intermodal Circular 1000–B, mandated that a lawsuit alleging loss or damage to the shipment be brought within one year. Therefore, SP argues that under either theory, the claims of plaintiff Tokio, and defendant and cross-complainant NYK, are time barred.

#### 1. The Raising of SP's Affirmative Defense in the Answer

Tokio initially argues that SP cannot at this time raise the affirmative defense that Tokio's claims against it are barred by the one year time limitation in the bill of lading, because SP failed to assert that affirmative defense in its answer.

■ Generally, if not asserted in a responsive pleading, an affirmative defense is waived. *See* Fed.R.Civ.Pro. 8(c); *Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1115 (7th Cir.1992). The Ninth Circuit has liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings. *See Magana v. Northern Mariana Islands,* No. 95–16120, 1997 WL 212509 at *11 (9th Cir. May 1, 1997). However, a defendant may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff. *Id.* (citing *Rivera v. Anaya,* 726 F.2d 564, 566 (9th Cir.1984).

■ In the instant case SP argues that it did raise in its Answer the affirmative defense that Tokio's claims against it are barred by the time limitation in the bill of lading. SP's fourth affirmative defense provides as follows:

Whatever shipments were received for transportation by SP were accepted in accordance with, and subject to, all the terms

**1078**

and conditions of the plaintiff's contract with defendant NYK, as they applied to the SP, and the terms and conditions of SP's contract with NYK, and SP's Governing Publication and the rules set forth therein.

(Answer to 1st Amend. Compl. ¶ 24.) Rule 8(b) provides that a party need only "state in short and plain terms [its] defenses to each claim asserted." Fed.R.Civ.Pro. 8(b). In the instant case, although SP's Answer does not specifically state that Tokio's claim against it is barred by the contractual time limitation in the bill of lading, it does state that Tokio's claim is subject to all the terms and conditions of the bill of lading. The contractual time limitation is one such term or condition of the bill of lading. The Court finds that SP has set forth in "short and plain terms" its affirmative defense that Tokio's claim is subject to all the terms and conditions of the bill of lading, including the contractual time limitation, in conformance with Rule 8. Therefore, SP has not waived this affirmative defense.

### 2. The One Year Time Limitations

SP argues that plaintiff Tokio and cross-complainant NYK are barred from asserting the instant suit against it based upon the one year time limitation contained within the bill of lading and the SP Intermodal Circular 1000–B. Both Tokio and NYK assert several arguments in opposition.

#### a. Plaintiff Tokio's Arguments

Plaintiff Tokio argues that SP may not avail itself of the protections in the bill of lading. NYK's bill of lading included a "Himalaya clause," which is commonly used to extend a carrier's defenses and liability limitations to certain third parties performing services on its behalf.[4] *See Taisho Marine & Fire Ins. Co., Ltd. v. Vessel Gladiolus*, 762 F.2d 1364, 1366 (9th Cir.1985). Plaintiff argues that SP is not entitled to the carrier's liability limitation under the Himalaya clause because SP was a subcontractor of Centex, not of NYK, who is the carrier under the bill of lading.

The Himalaya clause in the instant bill of lading reads as follows:

The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

Every such agent, servant, representative or Sub–Contractor shall be entitled to the benefit of each and every defense, privilege, right, exemption, limitation, immunity, liberty and condition contained herein for the benefit of the Carrier, including without limitation, the limitation of liability provision in Article 28, as if such provisions were expressly for their benefit, and in entering into this contract the Carrier, to the extent of those provisions, does so not only on his own behalf but also as agent and trustee for such agents, servants, representatives and Sub–Contractors.

(Matthey Decl., Exh. A.)

The general rule is that a Himalaya clause must clearly express an intent to extend the carrier's defenses to the third party claiming its benefits before it will be upheld. *See Tessler Brothers (BC) Ltd. v. Italpacific Line*, 494 F.2d 438 (9th Cir.1974). "Whether a bill of lading extends limitations of liability to [third parties] depends on whether 'the clarity of the language used expresses such to be the understanding of the contracting parties.' " *Id.* (quoting *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 305, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). Despite the multitude of out of state district court decisions cited by both parties in the instant case, the Ninth Circuit has held that:

Whether an entity is an intended beneficiary of a Himalaya Clause depends upon the contractual relation between the party seeking protection and the ocean carrier, as well as the nature of the services performed compared to the carrier's responsibilities under the carriage contract.

*Ins. Co., Ltd. v. Maersk Line, Inc.*, 796 F.Supp. 336, 339 (N.D.Ill.1992), *aff'd*, 7 F.3d 238, 1993 WL 406499 (7th Cir.1993).

---

4. The term "Himalaya clause" derives from the name of the steamship involved in *Adler v. Dixon*, 1 Q.B. 158 (Q.B.1954). *Taisho Marine and Fire*

*Taisho Marine,* 762 F.2d at 1367; *see Mori Seiki USA, Inc. v. M.V. Alligator Triumph,* 990 F.2d 444, 450 (9th Cir.1993).

In examining the nature of the services performed compared to the carrier's responsibilities under the bill of lading, it is undisputed that the instant bill of lading is a through bill of lading, which governed shipment from its origin in Tokyo, Japan to its destination in Chicago, Illinois. (SP's Facts Nos. 2, 5; Tokio's Facts Nos. 2, 5; NYK's Facts No. 2, 5.) Therefore, there is no question that the rail carriage by SP from Los Angeles to Chicago was directly related to the carrier's responsibilities under the carriage contract. *See Mori Seiki,* 990 F.2d at 450.

■ The real issue revolves around the contractual relationship between NYK and SP. SP initially argues that it is a subcontractor under the express terms of the bill of lading regardless of its contractual connection with NYK. The instant bill of lading defines "sub-contractor" as follows:

> (e) "Sub–Contractor" includes owner and operators of Vessel (other than the Carrier), stevedores, terminal operators, warehousemen, road and rail transport operators and any independent contractor employed by the Carrier in performance of the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

(Matthey Decl., Exh. A.) SP argues that because it is indisputably a rail transport operator, it is automatically a sub-contractor for purposes of the bill of lading, regardless of whether it was employed by the Carrier. However, Tokio argues that the definition of sub-contractor in the bill of lading is ambiguous. Tokio argues that the definition of subcontractor may be read as SP asserts, or as if the phrase "employed by the Carrier" further limits the term "rail transport operators." Under Tokio's reading a rail transport operator would only be a sub-contractor within the meaning of the bill of lading if it was also "employed by the Carrier. Tokio correctly asserts that any ambiguity in the bill of lading must be construed against the party who seeks to be protected by the Hi-

malaya Clause." *Institute of London Underwriters v. Sea–Land Serv.,* 881 F.2d 761, 767 (9th Cir.1989). However, in the instant case, this Court need not determine whether the definition of sub-contractor is ambiguous, based on SP's argument that it did in fact enter into a contractual or employment relationship with NYK.

■ SP argues that it did in fact enter into a direct contractual relationship with NYK because it entered into a contract with Centex, who was acting as an agent for NYK. "The Restatement (Second) of Agency has been adopted in maritime law as an accurate statement of applicable general agency principles." *Stevens Technical Services, Inc. v. SS Brooklyn,* 885 F.2d 584, 589 (9th Cir. 1989). According to the Restatement (Second) of Agency:

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Restatement (Second) of Agency § 1(1) (1958). The Ninth Circuit recently held, on essentially the same facts as the instant case, that a third party may take advantage of the carrier's defenses and liability limitations pursuant to a Himalaya clause if it entered into a direct contractual relationship, not with the carrier named in the bill of lading, but with a party acting as the carrier's agent. *Mori Seiki,* 990 F.2d at 450. Generally, issues regarding agency are treated as fact issues. *N.L.R.B. v. Donkin's Inn, Inc.,* 532 F.2d 138, 141 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976). However, in the instant case it is undisputed that Centex acts as NYK's agent in arranging for rail transportation for goods covered by the NYK bill of lading. (Tsagaris Decl. ¶ 3.) In addition, it is also undisputed that Centex is a wholly owned subsidiary of NYK (U.S.A.) Inc. *See Mori Seiki,* 990 F.2d at 450–51 (finding fact that party in direct contractual relationship was 90% owned by carrier and 10% owned by carrier's local steamship agent relevant to a finding of agency.)

Therefore, in the instant case the Court finds that Centex was acting as NYK's agent when it hired SP, and that NYK was there-

fore a party to the contract with SP. On this basis, the provisions of the Himalaya clause are held to extend the defenses provided to the carrier by the bill of lading to SP, including the time limitation. It is undisputed that Tokio did not file suit against SP within one year of delivery of the subject shipment. (SP's Fact No. 12.) Therefore, the Court finds that Tokio's claims against SP are barred by the one year time limitation in the bill of lading. Because this Court has determined that the one year time limitation in the bill of lading bars plaintiff's claims, it need not address SP's alternative argument that the suit is barred by the one year time limitation in SP Intermodal Circular 1000–B.

### b. Defendant and Cross–Complainant NYK's Argument

■ Defendant and cross-complainant NYK argues that neither the time limitation in the bill of lading or in SP Intermodal Circular 1000–B should apply to it. NYK asserts that a contractual time limitation is not applicable to its claim against SP because that claim is one for indemnity.

■ The general rule is that an indemnity action does not accrue until the indemnitee's liability is determined by judgment or payment. *See Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 236 (5th Cir.1985); *States S.S. Co. v. American Smelting & Refining Co.,* 339 F.2d 66 (9th Cir.1964), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965); Restatement of Restitution § 77 (1936). "A contractual limitations period applicable to claims between the contracting parties does not alter this rule for indemnity actions." *Atlantic Mut. Companies v. Orient Overseas Container Line,* No. C91–1097R, 1992 WL 226953 at *3 (W.D.Wash. Mar.26, 1992); *see States S.S.,* 339 F.2d at 69–70; *Hercules Inc. v. Stevens Shipping Co.,* 698 F.2d 726, 735 (5th Cir.1983) (cause of action for defendant's indemnity claim against a third-party defendant arises after liability has been established, despite shorter contractual limitations period in towage contract between plaintiff and third-party defendant.)

SP argues that the one year contractual time limitations in the bill of lading and in the SP Intermodal Circular 1000–B apply notwithstanding the fact that NYK's cross-claim is for indemnification. NYK supports this position with two out of state district court decisions. *See Sankyo Seiki (America), Inc. v. S.S. Korean Leader,* 556 F.Supp. 337, 342–43 (S.D.N.Y.1982), *aff'd,* 723 F.2d 895 (2nd Cir.1983); *American Chicle Div. Warner Lambert Co. v. M/V Mayaguez,* 540 F.Supp. 166 (S.D.Tex.1981). However, this Court declines to follow the reasoning set forth in *Sankyo* and *American Chicle,* because the Ninth Circuit has specifically held that an action for indemnification accrues at the time of the indemnitee's payment despite a shorter contractual limitations period applying to the claims between the parties. *See States S.S.,* 339 F.2d at 70. This position has been specifically adopted by district courts within the Ninth Circuit. *See Atlantic Mut.,* 1992 WL at *4; *American President Lines, Ltd. v. Coastal Transportation, Inc.,* No. C91–410Z, 1992 WL 437646 at *3 (W.D.Wash. Jun.11, 1992).

Therefore, this Court finds that NYK's cross-claim for indemnification against SP is not barred by the one year contractual time limitation in the bill of lading or in SP Intermodal Circular 1000–B.

### 3. Conclusion

The Court finds that Tokio's claim against SP is barred by the one year time limitation in the bill of lading, and therefore SP's Motion for Summary Judgment against Tokio is GRANTED. The Court also finds that NYK's cross-claim for indemnity against SP is not barred by the one year time limitation in either the bill of lading or SP Intermodal Circular 1000–B, and therefore SP's Motion for Summary Judgment against NYK is DENIED.

### C. Defendant and Cross–Complainant NYK's Motion for Summary Judgment Against Defendant and Cross–Defendant SP

Defendant and Cross–Complainant NYK seeks summary judgment against Defendant and Cross–Defendant SP in that if NYK is found liable to plaintiff Tokio for the alleged

cargo damage at issue, that NYK is entitled to indemnity from SP.

The initial issue which must be determined is the applicable law. It is clear that special rules of liability govern the liability of carriers to the original shippers of goods. The Carriage of Goods by Sea Act ("COGSA") governs liability of carriers from the time goods are loaded to the time when they are discharged from a ship. *See* 46 U.S.C. §§ 1301(e) & 1303(2). Therefore, COGSA would not apply to the instant case, where NYK asserts that the damage occurred on land, after discharge from NYK's carrier.

SP apparently assumes that the Carmack Amendment to the Interstate Commerce Act governs the instant case, without addressing any of NYK's arguments as to the applicable law. *See* 49 U.S.C. § 11706. However, NYK claims that the Carmack Amendment does not apply to the instant case. While NYK's argument as to why the Carmack Amendment does not apply is unclear, the Court finds that the Carmack Amendment does not apply to NYK's cross-claim against SP. The older version of the Carmack Amendment did not cover goods shipped under a through bill of lading issued in a foreign country. *See Reider v. Thompson,* 339 U.S. 113, 117, 70 S.Ct. 499, 94 L.Ed. 698 (1950). After the 1978 revision of the Carmack Amendment, bringing certain shipping involving transportation outside the United States within its scope, courts have generally held that where goods are shipped from a foreign country but the domestic transportation is covered by a separate bill of lading, the Carmack Amendment may apply to the domestic leg of the journey. *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 701 (11th Cir.1986), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987); *Capitol Converting Equipment v. Lep Transport,* 750 F.Supp. 862, 864 (N.D.Ill.1990), *aff'd,* 965 F.2d 391 (7th Cir.1992); *Nebraska Wine & Spirits, Inc. v. Burlington Northern R.R. Co.,* No. 91–0103–CW–W–2, 1992 WL 328938, at *6 (W.D.Mo.1992). However, in the instant case it is undisputed that there was no separate bill of lading for the domestic transportation,

rather, the goods were shipped pursuant to a single, through bill of lading issued in Japan, a foreign country. Therefore, the Carmack Amendment does not apply to the instant case.

Since neither COGSA or the Carmack Amendment applies to the instant case, this Court is faced with, as NYK terms it, a "statutory gap." NYK argues that federal common law should be imported to fill this statutory gap. The problem is determining just what exactly is federal common law as to the indemnity liability of an inland carrier to an ocean carrier under a foreign through bill of lading. NYK argues that the federal common law as set forth in *Powhatan Steamboat Co. v. Appomattox R. Co.,* a 1860 Supreme Court case, should apply. *See Powhatan Steamboat Co. v. Appomattox R. Co.,* 65 U.S. 247, 24 How. 247, 16 L.Ed. 682 (1860). However, all *Powhatan* states is that a carrier issuing a through bill of lading has a right to indemnity against a subcontracted connecting carrier over whose line the loss or damage occurred. *Id.* at 254.

The issue then becomes whether NYK's federal common law right to indemnification by SP is grounded in strict liability or negligence principles. NYK admits that at common law, negligence was the basis for indemnity between carriers. However, NYK argues that negligence should not be the standard under federal common law in the instant case. NYK bases this argument on the reasoning that since an original shipper under the Carmack Amendment and COGSA may recover against a carrier without proof of negligence pursuant to the terms of the Carmack Amendment, it is only logical that it, as a carrier, should have no greater burden of proof against SP on its claim for indemnity. However, the cases NYK cites are inapposite to the instant case because they are cases wherein either the Carmack Amendment or COGSA were applicable. If Congress wished to include cases such as the instant case within its statutory scheme it could have done so. However, this case falls outside the statutory scheme imposing strict liability between carriers. In the absence of any clear authority that strict liability law should govern NYK's claim for indemnity

against SP, this court finds that federal common law regarding indemnity is based on negligence. *See Mid–Continent Int'l v. Evergreen Marine Corp.*, No. 87 C 2579, 1987 WL 28266 at *2–3 (N.D.Ill., Dec.14, 1987). Therefore, under negligence principles SP would be liable to NYK for damage caused by its breach of duty to use reasonable care in the transportation of the goods. *Id.*

In the instant case it appears to be undisputed that the alleged freezing damage to the goods occurred during the rail transportation by SP. However, the mere fact that the goods were damaged during SP's rail transportation does not demonstrate that SP breached its duty by failing to use reasonable care. In addition, SP has presented evidence that NYK hired a third entity, PFE, to provide temperature protective services during inland rail transportation of the container. (SP's Facts Nos. 7, 11.) The fact that a subcontractor of NYK may have been responsible to some extent for the temperature of the goods during rail transit is enough to raise a triable issue of fact as to whether the damage to the goods was caused by SP. Therefore, the Court finds that SP has raised a triable issue of fact as to whether it was negligent in the carriage of the goods, and therefore liable to NYK for indemnification. The Court thus DENIES defendant and cross-claimant NYK's Motion for Summary Judgment against defendant and cross-defendant SP.

## V. CONCLUSION

The Court hereby:

(1) GRANTS defendant and cross-defendant SP's Motion for Summary Judgment against plaintiff Tokio.

(2) DENIES defendant and cross-defendant SP's Motion for Summary Judgment against defendant and cross-complainant NYK.

(3) DENIES defendant and cross-complainant NYK's Motion for Summary Judgment against defendant and cross-defendant SP.

**IT IS SO ORDERED.**