**NATIONAL RURAL TELECOMMUNICATIONS COOPERATIVE, Plaintiff,**

v.

**DIRECTV, INC., Hughes Communications Galaxy, Inc. Defendants.**

Nos. CV 99–5666 LGB(CWX), CIV 00–8672 LGB, CV 00–00368 LGB, CIV 01–6220 LGB, CV 00–2117 LGB.

United States District Court, C.D. California.

May 22, 2003.

John J. Quinn, Jr., Sharon Douglass Mayo, David S. Eisen, James D. Layden, Arnold & Porter, Elizabeth D. Mann, James T. Grant, McDermott Will & Emery, Los Angeles, CA, Joseph P. Crimmins, Jon C. Cowen, Posternak Blankstein & Lund, Boston, MA, Abbe David Lowell, Chadbourne & Parke, Thomas H. Yancey, Joseph R. Guerra, Sidley Austin Brown & Wood, Washington, DC, Larry R. Feldman, Joel N. Klevens, Fogel Feldman Ostrov Ringler & Klevens, Gregory A. Nylen, Jeffrey E. Scott, Raymond B. Kim, Greenberg Traurig, Santa Monica, CA, Michael Anthony Lindsay, Dorsey & Whitney, Minneapolis, MN, for Plaintiff.

John I. Lazar, Leonard D. Venger, Sam S. Puathasnanon, Manatt Phelps & Phillips, Los Angeles, CA, Dustin F. Hecker, Posternak Blankstein & Lund, Boston, MA, for Plaintiff and Counter–Defendant.

Steven E. Bledsoe, Peter F. Smith, Kirkland & Ellis, Los Angeles, CA, for Defendants.

R. Alexander Pilmer, Kirkland & Ellis, Los Angeles, CA, for Defendants and Third–Party Plaintiff.

Richard K. Welsh, Kirkland & Ellis, Los Angeles, CA, for Third–Party Plaintiff.

Rebecca J. Wahlquist, Kirkland & Ellis, Los Angeles, CA, for Counter–Defendant.

Michael E. Baumann, for Defendants, Third-Party Plaintiff and Counter–Claimant.

April L. Ammeter, Mark T. Cramer, Kirkland & Ellis, Los Angeles, CA, for Defendants and Counter–Claimant.

## ORDER GRANTING IN PART AND DENYING IN PART DIRECTV'S SUMMARY JUDGMENT MOTION NO. 1

BAIRD, District Judge.

## I. INTRODUCTION

This matter involves five cases dealing with DIRECTV, Inc. ("DIRECTV") that have been consolidated before this Court.[1] Presently before the Court are four summary judgment motions filed by DIRECTV. By this Order, the Court addresses DIRECTV's first summary judgment motion dealing with the issues of limitation of liability and the vesting of the contingent right to substitute Premium Services.[2] in case nos. 99–5666 and 99–8672.[3]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background [4]

In April of 1992, the National Rural Telecommunications Cooperative ("NRTC") entered into an agreement, the DBS Distribution Agreement ("DBS Agreement" or "Agreement"), with DI-

---

1. The five cases are CV 99–5666, CV 99–8672, CV 00–368, CV 00–2117 and CV 01–6220.

2. "Premium Services" include HBO, Showtime, Cinemax and the Movie Channel.

3. The National Rural Telecommunications Cooperative is the plaintiff in both of these cases.

4. The parties are intimately familiar with the facts surrounding this litigation; as such, the Court only recites here the facts that are pertinent to Motion No. 1.

RECTV's predecessor-in-interest, Hughes Communications Galaxy, Inc. ("HCG"). Declaration of Alexander Pilmer in Support of DIRECTV's Summary Judgment Motions ("Pilmer Decl."), Exh. 10, Agreement. Under the Agreement, HCG agreed to provide NRTC with the rights to the Premium Services. Declaration of Michelle Morris King in Support of NRTC's Opposition to DIRECTV's Summary Judgment Motions ("King Decl."), Exh. 193, Ramo Depo. at 323:14–25; Exh. 169, Hartenstein Depo. at 331:17–332:4; *see also* Pilmer Decl., Exh. 10, Agreement § 2.07. After signing the Agreement, HCG commenced negotiations with the providers of Premium Services, *e.g.*, HBO and Showtime, so that such services would be available to NRTC and HCG in their respective territories. King Decl., Exh. 193, Ramo Depo. at 331:2–7; Exh. 149, Chapman Depo. at 103:19–105:12. In 1993, the United States Satellite Broadcasting Company ("USSB"), a competitor of HCG and NRTC, reached an exclusive agreement with the providers of Premium Services. King Decl., Exh. 176, Hubbard Depo. at 410:18–411:4. During 1993, HCG tried unsuccessfully to obtain access to the Premium Services by negotiating with USSB. King Decl., Exh. 193, Ramo Depo. at 334:19–335:21, 336:14–17, 336:22–337:19 and 338:3–25.

HCG's inability to obtain the rights to the Premium Services led to negotiations between NRTC and HCG, which resulted in the 1994 Amendment to the 1992 DBS Agreement (the "1994 Amendment"). The 1994 Amendment states in part that:

> [i]f HCG acquires the rights, in its sole discretion, to distribute HBO, Showtime, the Movie Channel or Cinemax, NRTC shall have the option, in its sole discretion, to substitute such programming for any one of the services listed on Exh. A on a service by service basis.

Pilmer Decl., Exh. 11, 1994 Amendment at ¶ 1.

In 1996, HCG assigned its rights and liabilities under the Agreement to DIRECTV, pursuant to a restructuring wherein DIRECTV Enterprises, Inc., the parent of DIRECTV, became a wholly owned subsidiary of Hughes Electronics. Pilmer Decl., Exhs. 73 & 74, Dun & Bradstreet Report re DIRECTV Enterprises, Inc. In December of 1998, General Motors, Hughes Electronics and USSB entered into a merger agreement (the "Merger Agreement"). Pilmer Decl., Exh. 16. Pursuant to the Merger Agreement, USSB was merged into Hughes Electronics. *Id.* Upon the completion of the merger, Hughes Electronics succeeded to all the rights and obligations set forth in USSB's service contracts with the various providers of Premium Services, including HBO and Showtime. Pilmer Decl., Exh. 16, Merger Agreement at § 1.4. Hughes Electronics and DIRECTV entered into a Sales Agency Agreement, signed in December of 1999, which "authorizes and grants DIRECTV the non-exclusive right to market, sell and transmit" the Premium Services, previously distributed by USSB. Pilmer Decl., Exh. 15.

After the merger between USSB and Hughes Electronics in December of 1998, NRTC met with DIRECTV to discuss NRTC's purported substitution rights under the 1994 Amendment. King Decl., Exh. 192, Phillips Depo. at 575:10–579:17. DIRECTV, however, took the position that NRTC's contingent right under the 1994 Amendment to substitute the Premium Services never vested because Hughes Electronics—and not DIRECTV—acquired USSB's rights to the Premium Services. Accordingly, DIRECTV declined to provide those and other services to NRTC. The instant litigation ensued.

## B. The Instant Lawsuit and Motion No. 1

DIRECTV's Motion No. 1 is directed to case nos. 99–5666 and 99–8672. In case no. 99–5666, *NRTC v. DIRECTV and HCG*,[5] NRTC alleges the following claims against DIRECTV: 1) breach of contract as to the exclusive distribution rights of the Premium Services (the "Premium Services Claim"), 2) breach of contract as to non-exclusive distribution rights of the Premium Services[6] and 3) declaratory relief. First Amended Complaint in case no. 99–5666. In case no. 99–8672, *NRTC v. DIRECTV and HCG*, NRTC alleges the following claims against DIRECTV: 1) breach of contract for failure to provide NRTC with the right to distribute various Advanced Services (the "Advanced Services Claim"),[7] 2) breach of contract for failure to provide NRTC with its proportional share of various revenues, cost savings, discounts, rebates, volume price breaks and financial or other benefits arising from DIRECTV's agreements with other parties, including programmers and the providers of Advanced Services (the "Launch Fee Claim"),[8] 3) declaratory relief and 4) violation of California Business and Professions Code § 17200.

In Motion No. 1, DIRECTV requests partial summary judgment on three separate issues arising from NRTC's claims in the 99–5666 and 99–8672 cases: 1) NRTC's bargained-for remedies do not include the damages it seeks because of the limitation of liability provision in the DBS Agreement; 2) NRTC's contingent right to substitute Premium Services never vested because DIRECTV never obtained the right to distribute the Premium Services; and 3) NRTC's claim under California Business & Professions Code § 17200 claim fails as a matter of law. By this Order, the Court addresses the issues raised by DIRECTV's Motion No. 1.

DIRECTV filed its moving papers in support of Motion No. 1 on September 11, 2002. NRTC filed its Opposition on October 11, 2002. DIRECTV filed its Reply on October 21, 2002.

## III. LEGAL STANDARDS

### A. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To avoid summary judgment, the non-movant must set forth specific facts showing that there

---

**5.** DIRECTV and HCG are hereinafter collectively referred to as "DIRECTV."

**6.** Claim 2 was voluntarily dismissed from this case on 8/28/00. *See* Docket Entry No. 137.

**7.** The "Advanced Services" include Wink, TiVo, Ultimate TV and AOLTV.

**8.** NRTC alleges that DIRECTV's obligations to provide it with the Advanced Services and to the revenue from such services also arise under the DBS Agreement and its 1994 Amendment.

remains a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." *Id.* The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 325, 106 S.Ct. 2548. If the non-moving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.*

### B. California Contract Law [9]

■■■ California contract law establishes that "the fundamental goal of contractual interpretation is to give effect to the mutual intentions of the parties." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." *Morey v. Vannucci,* 64 Cal. App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998).

California courts begin their analysis of a contract with the contract language. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ.Code § 1638. The Cal-

ifornia Civil Code mandates that the "intention of the parties [ ] be ascertained from the writing alone, if possible" and from the review of the contract as a whole. *Id.* at §§ 1636 & 1641.

## IV. ANALYSIS

### A. Limitation of Liability

DIRECTV argues that the limitation of liability provision in the Agreement controls the type of remedies that NRTC may be entitled to. DIRECTV's Mem. of P's & A's in Support of Motion No. 1 at 1:3–5. Specifically, DIRECTV disputes the remedies that NRTC is seeking for its claim 1 in case no. 99–5666 (the "Premium Services Claim"), claim 1 in case no. 99–8672 (the "Advanced Services Claim"), claim 2 in case no. 99–8672 (the "Launch Fee Claim") and claim 4 in case no. 99–8672 for violation of California Business & Professions Code § 17200 (the "Section 17200 Claim"). DIRECTV argues that NRTC's sole legal remedy "is to terminate the Agreement, keep the substantial revenues it has collected to date, and receive a partial refund of its initial investment." *Id.* at 12:4–14:15 citing Section 11.01(i) of the Agreement.

#### 1. The relevant claims and the relief sought by NRTC

Preliminarily, the Court finds it helpful to list the relevant claims and the corresponding relief that NRTC seeks.

##### a. case No. 99–5666

On its Premium Services Claim, NRTC seeks "as damages the total revenues that

---

**9.** The DBS Agreement contains a choice of law provision which states that California law applies to the construction and operation of the Agreement. Pilmer Decl., Exh. 10, Agreement § 18.02. In diversity cases, as is the case here, federal courts apply the conflict-of-law principles of the forum state. *Sarlot–Kantarjian v. First Pennsylvania Mortgage Trust,* 599 F.2d 915, 917 (9th Cir.1979). Under Califor-

nia law and Section 187 of the Restatement Second of Conflict of Laws, the parties' agreed-upon choice of law provision should be enforced. *Id.* at 917; *see Nedlloyd Lines B.V. v. Super. Ct.,* 3 Cal.4th 459, 467–68, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). The parties do not dispute that California law applies to the instant dispute.

its DBS Participants should have received, derived from the exclusive sale of Premium Programming in NRTC's territories. This amount may be calculated as the retail revenues that DIRECTV received from subscribers in NRTC territory ... less costs." Pilmer Decl., Exh. 14, NRTC's Second Supp. Rule 26 Initial Disclosures at 2. Additionally, NRTC also intends to seek damages to recover, among other things, its margin on the programming, lost profits, and prejudgment interest. *Id.* at 2–4.

### b. case No. 99–8672

On its Advanced Services Claim, NRTC seeks "as damages all revenues DIRECTV has received from NRTC subscribers with respect to the sale of Advanced Services, less costs properly chargeable against such revenues under the 'Agreement.'" *Id.* at 4. Additionally, NRTC also intends to seek damages for payments and other consideration that DIRECTV received from the providers of Advanced Services. *Id.*

On its Launch Fee Claim, NRTC seeks "its proportional share of revenues, costs savings, discounts, volume price breaks and financial or other benefits that DIRECTV has received or will receive through the time of trial for transmitting DBS programming that has not been shared with NRTC." *Id.* at 5.

On its Section 17200 Claim, NRTC seeks "to recover as restitution all revenues DIRECTV has received from NRTC sub- scribers with respect to the sale of Advanced Services, less costs properly chargeable against such revenues." *Id.* at 5. NRTC also seeks "to recover as restitution its proportionate share of revenues, costs savings, discounts, volume price breaks and financial or other benefits that DIRECTV has received or will receive through the time of trial for transmitting DBS programming that has not been shared with NRTC." *Id.*

**2. Whether the limitation of liability provision limits the relief sought by NRTC on its Premium Services Claim, Advanced Services Claim and Launch Fee Claim?**

Section 13 of the Agreement states in relevant part:

13. *Limitation of Liability:*

(a) [ ] IT IS EXPRESSLY AGREED THAT HCG'S SOLE OBLIGATION AND LIABILITIES RESULTING FROM A BREACH OF THIS AGREEMENT AND NRTC'S EXCLUSIVE REMEDIES FOR ANY CAUSE WHATSOEVER (INCLUDING, WITHOUT LIMITATION, LIABILITY ARISING FROM NEGLIGENCE) ARISING OUT OF OR RELATING TO THIS AGREEMENT AND/OR THE TRANSACTIONS CONTEMPLATED HEREBY ARE LIMITED TO THOSE SET FORTH IN SECTIONS 7.05, 7.07, 7.08, 10, 11 AND 13(b) THEREOF AND ALL OTHER REMEDIES OF ANY KIND ARE EXPRESSLY EXCLUDED.[10]

---

10. Section 7.05 provides for indemnification for investigative costs and other fines due to the content of programming. Section 7.07 concerns the sale and use of transponders. Section 7.08 concerns the cessation of program services if the programming violates the law. Section 10 governs services outages, and provides a method for determining credits and termination rights available in such occurrences. NRTC's Chief Executive Officer testified that he was not aware of any claims under these provisions. Pilmer Decl., Exh. 92, Phillips 1202:16–1206:15. Section 13(b) sets forth the parties' indemnity obligations and is not applicable here. Thus, the only remedies relevant to the instant litigation are those set forth under Section 11 of the Agreement.

(b) IN NO EVENT SHALL HCG BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER FORESEEABLE OR NOT, OCCASIONED BY ... ANY OTHER CAUSE WHATSOEVER.

Pilmer Decl., Exh. 10, Agreement at 68.

■■■ A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. Cal. Civ.Code § 1636. The basic premise of contract law is to effectuate the expectations of the parties to the agreement, to give them the benefit of the bargain they struck when they entered into the agreement. *KGM Harvesting Co. v. Fresh Network*, 36 Cal.App.4th 376, 382, 42 Cal.Rptr.2d 286 (1995). Contract damages are generally limited to those contemplated by the parties when the contract was entered into. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). In this case, the express language of Section 13(a) limits the liabilities of the parties. Under California law, parties may agree by their contract to the limitation of their liability in the event of a breach. *Artukovich v. Pac. States Cast Iron Pipe Co.*, 78 Cal.App.2d 1, 4, 176 P.2d 962 (1947); *see also Markborough Cal., Inc. v. Super Ct.*, 227 Cal.App.3d 705, 714, 277 Cal.Rptr. 919 (1991) (Limitation of liability provisions "have long been recognized as valid in California.").

NRTC proffers four arguments in opposition to DIRECTV's position with regard to the limitation of liability issue. First, NRTC argues that the doctrine of judicial estoppel bars DIRECTV from arguing that the limitation of liability provision limits NRTC's damages. Second, NRTC argues that, notwithstanding the limitation of liability provision in the Agreement, Section 13(c) of the Agreement allows NRTC to recover the remedies it is seeking. Third, NRTC argues that there is a genuine issue of material fact whether DIRECTV is liable for an Intentional Breach under section 13(d) of the Agreement. Finally, NRTC argues that the limitation of liability provision is unconscionable and/or would deprive NRTC of the substantial value of its contractual bargain. The Court now addresses each of NRTC's four arguments.

### a. NRTC's first argument: whether the doctrine of judicial estoppel bars DIRECTV from arguing that the limitation of liability provision limits NRTC's damages?

■■ Judicial estoppel is an equitable doctrine that precludes a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir.2001).[11] The Ninth Circuit has stated:

> This Court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts".

*Id.* (internal citations and quotations omitted). The United States Supreme Court has articulated three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire

---

11. Whether sitting in diversity or not, "federal law governs the application of judicial estoppel in federal court." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir.1996).

whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal citations and quotations omitted). The Court now considers the applicability of the three *New Hampshire* factors to the instant case.

(i) whether DIRECTV's current position is inconsistent with a position taken earlier?

In its opposition to NRTC's June 1999 request for a preliminary injunction, DIRECTV argued that "there is simply no reason for the Court to order equitable relief when money damages will compensate NRTC for harm as alleged." DIRECTV's Opposition to NRTC's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("DIRECTV's Opposition to *Ex Parte* ") at 3:15–17, Exh. 21 of King Decl; *see also Id.* at 19:8–25 (stating that "[t]his is a simple breach of contract claim and damages are not only sought, but readily calculated. *See* Complaint, at Prayer for Relief.... The classic remedy for breach of contract is money damages and where money damages are adequate, no irreparable injury exists."); *Id.* at 22:4–5 (stating that "[t]he 'harm' NRTC complains of is precisely the type of harm that can be quantified in damages.").

In the instant motion, DIRECTV argues that "[t]he Agreement's limitation of liability provision prevents NRTC from recovering anything other than a Partial Refund of its Committed Member Payment if it terminates the Agreement." DIRECTV's Mem. of P's & A's in Support of Motion No. 1 at 6:16–17:2. Looking at the two positions taken by DIRECTV, the Court does not find that they are clearly inconsistent. In its opposition to NRTC's request for a preliminary injunction, DIRECTV took the position that money damages could adequately compensate NRTC. In the instant motion, DIRECTV takes the position that, to the extent NRTC is entitled to damages, such damages should be limited. Nevertheless, and assuming *arguendo* that DIRECTV has taken inconsistent positions, the Court next considers the second *New Hampshire* factor.

(ii) whether DIRECTV succeeded in persuading the court in accepting its earlier position, so that judicial acceptance of an inconsistent position in this proceeding would create the perception that this Court was misled?

In its June 17, 1999 Order,[12] this Court denied NRTC's motion for a preliminary injunction and held:

> With regard to plaintiff's request that the Court enjoin defendants from broadcasting the premium programming and order defendants to provide it to plaintiff, the Court finds that if plaintiff prevails at trial, monetary damages would compensate it for lost profits arising out of defendants' refusal to provide it with the premium programming. When adequate monetary damages will ultimately be available to compensate plaintiff for

12. The June 17, 1999 Order was an Order Discharging Plaintiff's Order to Show Cause Regarding Diversity Jurisdiction, Deeming Plaintiff's *Ex Parte* Application for a Tempo-rary Restraining Order a Motion for Preliminary Injunction and Denying Plaintiff's Motion for a Preliminary Injunction. Pilmer Decl., Exh. 9, June 17, 1999 Order at 1.

the harm suffered, courts cannot consider the harm as weighing in favor of injunctive relief.

June 17, 1999 Order at 28:8–16, Exh. 9 of Pilmer Decl. However, earlier in the text of the June 17, 1999 Order, and while addressing the issue of subject matter jurisdiction, the Court specifically cited to and quoted Section 13(b) of the limitation of liability provision. *See* June 17, 1999 Order at 8:22–27, Pilmer Decl., Exh. 9. Thus, the Court was aware and did consider in the same order the limitation of liability provision. Additionally, the Court did not base its decision to deny NRTC's motion for a preliminary injunction solely on the finding that monetary damages would compensate NRTC for lost profits. Instead, the Court also held that NRTC did "not sustain a likelihood of success in proving that [DIRECTV] breached its obligation under the contract." *Id.* at 26:19–20. Moreover, because "an injunction would cause similar harm to defendants," the Court also held that NRTC "fail[ed] to show that the denial of an injunction would result in a balance of hardships tipping *sharply* in its favor." *See Id.* at 29:3–16 (emphasis in original).

Therefore, even if the court were to now adopt DIRECTV's current position regarding the limitation of liability provision, the fact that the Court was aware and cited to the limitation of liability provision when it denied NRTC's motion for a preliminary injunction rules out the possibility that the Court was misled by something DIRECTV said. *See New Hampshire,* 532 U.S. at 750–51, 121 S.Ct. 1808. The Court now considers the third *New Hampshire* factor.

(iii) whether acceptance of DIRECTV's position will give DIRECTV an unfair advantage or impose an unfair detriment on NRTC?

As the Court discusses at length below, *see infra* section "IV A 2 d," NRTC volun-tarily and expressly agreed to the limitation of liability provision, which is enforceable under California law. NRTC cannot now seek remedies it did not bargain for. *See KGM Harvesting Co. v. Fresh Network,* 36 Cal.App.4th 376, 382, 42 Cal. Rptr.2d 286 (1995) ("The basic premise of contract law is to effectuate the expectations of the parties to the agreement, to give them the 'benefit of the bargain' they struck when they entered into the agreement."). Thus, to the extent DIRECTV's position in the instant motion is inconsistent with the one taken in 1999, the Court does not find that DIRECTV will receive an unfair advantage or that NRTC will suffer an unfair detriment.

Therefore, and based on the foregoing, the Court holds that, as a matter of law, DIRECTV is not judicially estopped from arguing that NRTC's damages are subject to the limitation of liability provision.

b. **NRTC's second argument: whether, notwithstanding the limitation of liability provision in the Agreement, Section 13(c) of the Agreement allows NRTC to recover the remedies it is seeking?**

NRTC argues that the limitation of liability provision in Section 13(a) of the Agreement does not preclude NRTC from obtaining monetary relief because "Section 13(c) explicitly allows NRTC to compel DIRECTV to 'perform its obligations under this Agreement,' including to turn over to NRTC the revenues from the sale of the Premiums and the launch fees that DIRECTV has collected [and which are] attributed to NRTC and its subscribers." NRTC's Mem. of P's & A's in Opp. to Motion No. 1 at 2:17–22. Section 13(c) of the Agreement states that:

[n]otwithstanding any other provision in this Agreement to the contrary, NRTC

and HCG each shall have the right to obtain injunctive relief, if necessary, in order to prevent the other party from willfully breaching its obligations under this Agreement or to compel the other party to perform its obligations under this Agreement.

Pilmer Decl., Exh. 10, Agreement at 69. NRTC argues that it "does not seek consequential damages, but rather injunctive relief to compel DIRECTV to specifically perform its obligations under the Agreement," which is allowed under Section 13(c) of the Agreement. *Id.* at 20:19–20. In support of its argument, NRTC relies on *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In *Bowen,* the Supreme Court held that a provision of the Administrative Procedure Act that precludes actions seeking money damages against federal agencies, does not bar a State from seeking relief to obtain money to which it claims entitlement under the federal Medicaid statute. *Id.* at 883–88, 108 S.Ct. 2722.

The *Bowen* opinion was recently distinguished by the United States Supreme Court in *Great–West Life & Annuity Ins. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Great–West Life,* the Court stated that "*Bowen,* unlike petitioners' claim, did not deal with specific performance of a **contractual** obligation to pay **past** due sums." *Id.* at 212, 122 S.Ct. 708 (emphasis in original). Thus, the Court added, "*Bowen* has no bearing on the availability of an injunction to enforce a contractual obligation to pay money past due." *Id.* The Court reasoned that an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, were not typically available in equity. *Id.* at 212–13, 122 S.Ct. 708. The Court also explained that without distinctions between equitable and legal relief, a "limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." *Id.* at 211 n. 1, 122 S.Ct. 708.

■ In this case, NRTC is seeking specific performance for past due monetary amounts under the Agreement. *See* NRTC Mem. of P's & A's in Opposition to Motion No. 1 at 21:4–7. As such, *Great–West Life* and not *Bowen* is persuasive here. Additionally, under California law, injunctions operate only with future effect; they are not granted to punish acts already completed. *See Blackmore Inv. Co. v. Johnson,* 213 Cal. 148, 150–51, 1 P.2d 978 (1931) ("[I]t is elementary that an injunction cannot be granted to stay an act already committed."); *Blake v. City of Eureka,* 201 Cal. 643, 662, 258 P. 945 (1927) (injunctive relief is "peculiarly a preventative [remedy] and not a remedial one; it is to restrain the wrongdoer, not to punish him after the wrong has been done or to compel him to undo it"); *Gold v. Los Angeles Democratic League,* 49 Cal.App.3d 365, 372, 122 Cal.Rptr. 732 (1975) ("an injunction lies only to prevent threatened injury and has no application to wrongs which have been completed.").

■ Therefore, and based on the above, the Court holds that, as a matter of law, Section 13(c) of the Agreement does not allow NRTC to seek an injunction for specific performance for the payment of past due amounts under the Agreement. Thus, NRTC's second argument fails.[13]

---

13. At Oral Argument, on May 5, 2003, counsel for NRTC cited to *Rogers v. Davis,* 28 Cal.App.4th 1215, 34 Cal.Rptr.2d 716 (1994) (citing *Greenstone v. Claretian Theo. Seminary,* 173 Cal.App.2d 21, 29, 343 P.2d 161 (1959), in arguing that NRTC is entitled to receive monetary relief under section 13(c) of the

### c. NRTC's third argument: whether there is a genuine issue of material fact as to an Intentional Breach by DIRECTV under section 13(d) of the Agreement?

NRTC argues that "DIRECTV carries the burden to demonstrate all of the essential elements of its affirmative defense [of limitation of liability],[14] including the inapplicability of Section 13(d) of the ... Agreement." NRTC's Mem. of P's & A's in Opposition to Motion no. 1 at 16:7–10. Specifically, NRTC argues that DIRECTV has failed to carry its burden on summary judgment to show that Section 13(d) of the Agreement does not apply. Section 13(d) of the Agreement states in relevant part that:

[n]otwithstanding the foregoing, HCG and NRTC agree to indemnify and hold each other harmless from and against all actual damages (but not including incidental or consequential damages, whether foreseeable or not) arising out of an Intentional Breach ... by such party of its obligations under this Agreement. The term "Intentional Breach" means only those breaches that are the result of (i) a decision by the Board of Directors of HCG or NRTC, or (ii) a deci-

sion by an officer empowered to take such action (president, vice president or chief financial officer) to willfully and intentionally breach the material terms or provisions of this Agreement or its obligations. . . .

Pilmer Decl., Exh. 10, Agreement at 69. NRTC cites to *Tokio Marine & Fire Ins. Co., Ltd. v. Kaisha,* 25 F.Supp.2d 1071, 1076–77 (C.D.Cal.1997), to support its claim that DIRECTV has the burden of proof as to Section 13(d), but nothing in *Kaisha* requires a defendant to prove a plaintiff's indemnity claim. The law is just the opposite. *See* 14 Cal. Jur.3d, Contribution and Indemnity § 71 ("the burden is on the plaintiff to prove by competent evidence the facts necessary to establish a cause of action on an agreement of indemnity.").

If NRTC intends to argue that it is entitled to damages under Section 13(d), then it must offer proof sufficient to create a triable issue of fact with respect to that claim, which includes a showing of an Intentional Breach by DIRECTV.[15] Here, NRTC has made such a showing. NRTC has offered evidence to show that, pursuant to the 1994 Amendment, DIRECTV agreed to provide the Premium Services to

Agreement. *Rogers,* however, is distinguishable from the instant case. There, the court was discussing how a plaintiff, who was seeking the remedy of *specific performance* in a real estate transaction, can be made whole by treating the transfer of ownership as having taken place at a date certain in the past. *See Rogers,* 28 Cal.App.4th at 1221, 34 Cal. Rptr.2d 716 . Here, however, section 13(c) grants each party the right to obtain injunctive relief. Injunctive relief and specific performance are not the same thing. *See* 58 Cal. Jur.3d Specific Performance § 2 ("Actions for specific performance are sometimes confused with other actions because of their similarity or because the end result may be the same. But the courts are careful to distinguish the true nature of an action and to refuse to apply the strict rules of proceeding for specific performance when in fact the action is of a

different nature."). Additionally, and as already stated by the Court, injunctions operate only with future effect; they are not granted to punish acts already completed. *See Blackmore Inv.,* 213 Cal. at 150–51, 1 P.2d 978.

14. NRTC's Opposition assumes without explanation or authority that limitation of liability is an affirmative defense. DIRECTV disagrees with NRTC's assumption. *See* DIRECTV's Mem. of P's & A's in Support of its Reply to Motion No. 1 at 3 n. 2.

15. DIRECTV contends, without any support, that NRTC cannot rely on Section 13(d) since it did not file an indemnity claim against DIRECTV. Nothing in the DBS Agreement requires that NRTC file an indemnity claim before it can avail itself of the protections of section 13(d).

NRTC, if DIRECTV obtained such services. *See* King Decl., Exh. 2; Exh. 193, Ramo Depo. at 376:2–14; and Exh. 192, Phillips Depo. at 322:23–324:21. NRTC has also offered evidence to show that, following the 1994 Amendment, it discussed with DIRECTV ways in which the latter might obtain rights to the Premium Services, including through an acquisition of USSB. King Decl., Exh. 156, Doran Depo. at 569:19–570:14, 571:18–20; Exh. 192, Phillips Depo. at 319:7–323:12, 459:2–460:14. However, and although DIRECTV had agreed to provide the Premium Services to NRTC on an exclusive basis, NRTC has offered evidence to show that DIRECTV had unilaterally decided not to provide to NRTC the Premium Services without some additional consideration being provided by NRTC. King Decl., Exh. 192, Phillips Decl. at 577:8–579:17; *see also* King Decl., Exh. 35, DIRECTV document tiled: "USSB Merger Executive Review Key Issues"; Exh. 49, financial analysis prepared in conjunction with the Hughes Electronics/USSB merger; Exh. 50, investment banker presentation charts. As further discussed below, *see infra* section "IV B," NRTC has raised a genuine issue of material fact whether DIRECTV has acquired the rights to distribute the Premium Services. Of course, it is undisputed that DIRECTV has not provided NRTC with the exclusive rights to distribute the Premium services.

■ Based on the foregoing, the Court finds that NRTC has raised a genuine issue of material fact whether DIRECTV Intentionally Breached the terms of the Agreement with respect to the Premium Services Claim.

■ As to the Launch Fees Claim, NRTC has offered evidence to show that DIRECTV concealed the actual amount of certain Launch Fees it received from programmers. For example, NRTC has offered evidence to show that although Fox News Network had agreed with DIRECTV to pay $51 million in Launch Fees, DIRECTV represented to NRTC that the amount to be paid by Fox News was only $ 25 million. *See* King Decl., Exh. 89, January 27, 2003 Letter from Richard Goldberg, DIRECTV Vice–President to B.R. Phillips, CEO for NRTC; and Exh. 98, October 1, 1996 Letter from James Ramo of DIRECTV to Chase Carey, Chairman and CEO of Fox News Network.

With regard to the Advanced Services Claim, NRTC has not offered any evidence to show that DIRECTV Intentionally Breached the DBS Agreement as to that Claim.[16] Therefore, the Court grants DIRECTV summary judgment on the issue of whether DIRECTV Intentionally Breached the DBS Agreement and its 1994 Amendment by not providing NRTC with the Advanced Services.

**d. NRTC's fourth argument: whether the limitation of liability provision is unconscionable and/or would deprive NRTC of the substantial value of its contractual bargain?**

DIRECTV argues that Section 11 of the Agreement provides NRTC's only remedy for DIRECTV's material breaches. Section 11 states in relevant part:

11.01 Termination by NRTC

(i) Upon the occurrence of any HCG Event of Default (as defined below), and only after written notice from NRTC to HCG followed by the expiration of any relevant cure period, NRTC may, for so long as such HCG

---

**16.** At Oral Argument, on May 5, 2003, NRTC's counsel directed the Court to Pegasus' Opposition Brief to DIRECTV's Motion No. 3. However, Pegasus' brief does not cite to any evidence of Intentional Breach with regard to the Advanced Services.

Event of Default shall continue, declare this Agreement to be in default ... and at any time thereafter, NRTC may, in its sole and absolute discretion, cancel this Agreement and exercise any other right or remedy that is provided for in this Agreement. A cancellation hereunder shall occur only upon written notice from NRTC to HCG within thirty (30) days following the HCG event of Default stating that such cancellation is made.... If an HCG Event of Default occurs on or after the Service Commencement Date and NRTC timely exercises its cancellation right under this section 11.01(i), then NRTC shall be entitled to a Partial Refund and the refund period used in calculating such Partial Refund shall equal the number of days from HCG's receipt of notice of such HCG Event of Default until the tenth anniversary of the Service Commencement Date.

Pilmer Decl., Exh. 10, Agreement, § 11.01(i). As defined in the Agreement, an "HCG Event of Default" includes HCG's failure to perform or observe any material covenant, condition, or agreement to be performed under the Agreement. *Id.* at § 11.01(i)(x). NRTC argues that Section 11 should not operate to preclude NRTC from seeking contractual remedies because "[s]uch an interpretation would deprive NRTC of the substantial value of its contractual bargain." *See* NRTC's Mem. of P's & A's at 23:19–21. Essentially, NRTC's argument implies that the limitation of liability provision, *i.e.*, Section 13(a),(b), combined with Section 11 of the Agreement are unconscionable.

■ California Civil Code section 1670.5 states that a court may refuse to enforce a contract clause that is unconscionable. *See* Cal. Civ.Code § 1670.5. The Legislative Committee Comments to section 1670.5 state that the test for unconscionability is whether "the clauses in-volved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.* cmt. 1. "The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." *Id.* (citations omitted). To determine unconscionability, courts look to whether the allocation of the burdens and benefits are so one-sided as to shock the conscience or whether there is an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Nunes Turfgrass, Inc. v. Vaughan–Jacklin Seed Co.*, 200 Cal.App.3d 1518, 1534, 246 Cal.Rptr. 823 (1988).

■ NRTC, who, by its own admission, is a cooperative with 900 members in forty-eight states, *see* Amended Complaint in case no. 99–5666 at 2:25–26, has not introduced any evidence to show that the limitation of liability provision is unconscionable. The provision is clearly labeled *"Limitation of Liability." See* Pilmer Decl., Exh. 10, Agreement at 68. The provisions limiting damages and other remedies are typed in all capital letters. *See id.* § 12(a), (b). Both parties were sophisticated, represented by counsel, and negotiated the Agreement at arm's length. *See* Pilmer Decl., Exh. 89, Janka Depo. at 12:5–24. NRTC's CEO testified about how important it was for each party, including NRTC, to have the limitation of liability provision in the Agreement. Pilmer Decl., Exh. 92, Phillips Depo. at 59:5–7. Moreover, DIRECTV is equally bound by the limitation of liability provisions at issue. *See* Pilmer Decl., Exh. 10, Agreement, § 13(b). "'Where two equal bargainers ... agree as to the appropriate remedy ... they should be held to the terms of their bargain.'" *O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir.1995) quoting *Tokio Marine & Fire Ins. Co. v.*

*McDonnell Douglas Corp.*, 617 F.2d 936, 941 (2nd Cir.1980). Based on the foregoing, the·Court finds that, as a matter of law, the limitation of liability provision combined with Section 11 of the Agreement are not unconscionable.

▪ NRTC also argues in footnote 22 of its Opposition that Section 11.01 fails of its essential purpose. NRTC's Mem. of P's & A's in support of its Opposition to Motion No. 1 at 23 n. 22 citing Cal. Com. Code § 2719(2).[17] California Commercial Code § 2719(2) states "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this case." Cal. Com.Code § 2719(2). This section becomes operative when a party is deprived of its contractual remedy. *O'Neill,* 50 F.3d at 687 quoting *Tokio Marine & Fire Ins. Co.,* 617 F.2d at 941. "A limited remedy fails its essential purpose when the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." *Computerized Radiological Servs., Inc. v. Syntex Corp.,* 595 F.Supp. 1495, 1510 (E.D.N.Y.1984) *rev'd in part on other grounds,* 786 F.2d 72 (2d Cir.1986). Moreover, an aggrieved party "[o]rdinarily . . .

must provide [the other] a reasonable opportunity to carry out the exclusive or limited remedy before . . . successfully [arguing] failure of essential purpose." 1 White & Summers, *Uniform Commercial Code,* § 12–10 at 661.

▪ In this case, NRTC has a remedy, namely, the partial refund of its Committed Member Payments.[18] *See* Pilmer Decl., Exh. 10, Agreement § 11.01. Additionally, NRTC never gave DIRECTV an opportunity to effect NRTC's remedies under Section 11 of the Agreement. NRTC never sent a notice to cure; *See* Pilmer Decl., Exh. 92, Phillips Depo. at 1206:16–21; NRTC never terminated the Agreement; *Id.* at 1206:22–1207:2; and NRTC never requested a refund of its Committed Member Payments. *Id.* at 1207:1–9. Thus, NRTC has not raised a genuine issue of material fact that Section 11.01 of the Agreement fails of its essential purpose. Therefore, NRTC's fourth argument also fails.

### 3. Whether the limitation of liability provision limits NRTC's damages as to its California Business & Professions Code § 17200 claim?

▪ DIRECTV argues that the limitation of liability provision also applies to the

17. Courts do̦ look to the Uniform Commercial Code, or its state analogues, in analyzing non-UCC agreements, such as the agreement between DIRECTV and NRTC. *See e.g., Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.,* 866 F.2d 752, 765 n. 25 (5th Cir.1989) (recognizing that "courts are free to reason by analogy" to [the UCC] . . . because "it is unlikely that a substantially different outcome would result from the application of traditional common law contract principles.").

18. A "Committed Member" is any NRTC member who "commits to distribute the DBS Distribution Services," *i.e.,* any NRTC member who enters into a Member Agreement with NRTC. Pilmer Decl., Exh. 10, Agreement at § 1.01(b). A "Committed Member Pay-

ment" is a payment paid by a Committed Member to NRTC based on certain mathematical formulas set forth in section 1.01(b) of the Agreement. *Id.* The DBS Agreement requires NRTC to deposit the Committed Member Payments it receives into an escrow account, to be later remitted to DIRECTV pursuant to the requirements of section 1.04(a) of the Agreement. *Id.* at §§ 1.01(b)(vi) and 1.04(a). Under section 11.01 of the DBS Agreement, where there is an "Event of Default" by DIRECTV after the "Service Commencement Date," "NRTC shall be entitled to a Partial Refund." *Id.* at § 11.01(i). A "Partial Refund" is a refund by DIRECTV to NRTC calculated using a mathematical formula based on the Committed Member Payments remitted by NRTC to DIRECTV. *Id.* at § 11.01(h).

remedies NRTC is seeking under its Section 17200 Claim. Section 13(a) of the Agreement states that "NRTC's exclusive remedies for any cause whatsoever ... arising out of relating to this agreement and/or the transaction contemplated hereby are limited ..." Pilmer Decl., Exh. 10, Agreement § 13(a). Under California law, such broadly-worded provisions encompass more than contract disputes. *See e.g., Coast Plaza Doctors Hosp. v. Blue Cross,* 83 Cal.App.4th 677, 686, 99 Cal.Rptr.2d 809 (2000) (holding that an arbitration clause applying to disputes "arising under" the agreement was broad enough to cover the plaintiff's tort and unfair business practice claims); *Berman v. Dean Witter & Co., Inc.,* 44 Cal.App.3d 999, 1003, 119 Cal.Rptr. 130 (1975) ("The phrase 'any controversy arising out or relating to this contract' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties.").

Here, NRTC's Section 17200 Claim stems from the relationship of the parties as embodied in the Agreement. *See* NRTC's First Amended Complaint ¶ 49. NRTC alleges that DIRECTV engaged in unfair business practices because it refused to allow NRTC to distribute the "Advanced Services" and to share "Launch fees"—the same allegations that make up NRTC's breach of contract claims. *Id.*

NRTC does not address DIRECTV's argument and case law in support of it ex-cept to state that "Section 17200 provides an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." Mem. of P's & A's in Support of Opp. to Motion No. 1 at 25 n. 23 citing *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000). NRTC also relies on a Texas state court decision involving a Texas statute. *See* Mem. of P's & A's in support of NRTC's opposition at 25 n. 23 (citing *Arthur's Garage, Inc. v. Racal–Chubb Security Systems, Inc.,* 997 S.W.2d 803 (Tex. App.1999)). The Court notes that Texas case law interpreting a Texas statute has no bearing on NRTC's Section 17200 claim.

Based on the foregoing, the Court finds that, as a matter of law, the limitation of liability provisions under Section 13 of the Agreement also apply to NRTC's Section 17200 Claim and bars the remedies NRTC seeks.[19]

Therefore, the Court GRANTS partial summary judgment in favor of DIRECTV and against NRTC declaring that the limitation of liability provision in Section 13 of the Agreement is valid and covers NRTC's Premium Services Claim, Advanced Services Claim, Launch Fee Claim and its Section 17200 Claim. Consistent with Section 11.01(i) of the Agreement, NRTC's sole legal remedy on those three claims is

---

19. The court also notes that even if NRTC is successful in proving that DIRECTV Intentionally Breached the Agreement, NRTC would be limited to indemnification from "actual damages" arising out of that Intentional Breach. *See* Pilmer Decl., Exh. 10, Agreement § 13(d) ("HCG and NRTC agree to indemnify and hold each other harmless from and against all actual damages ... arising out of an Intentional Breach."). It is well-established that "actual damages" are not permitted under California's Unfair Competition Law ("UCL"). *See* Court's Order addressing DIRECTV's Motion No. 2 at 31:9–10 ("Damages are not available under the UCL") (citing *Bank of West v. Super Ct.,* 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). Thus, the Court's instant holding that the limitation of liability provisions of sections 13(a) and (b) of the Agreement apply to NRTC's Section 17200 Claim necessarily means that NRTC is not entitled to the relief it is seeking as to that claim.

to terminate the Agreement, keep the revenues it has collected to date and receive a partial refund on its investment.

Based on the above, and as to the issue of the applicability of the limitation of liability provision, the Court:

a) GRANTS DIRECTV's motion for partial summary judgment on the issue of whether the limitation of liability provision limits the relief sought by NRTC on its Premium Services Claim, Advanced Services Claim, Launch Fee Claim and Section 17200 Claim; and

b) DENIES DIRECTV's motion for partial summary judgment on the issue of whether DIRECTV is liable for an Intentional Breach pursuant to section 13(d) of the Agreement as to the Premium Services and Launch Fees Claims.[20]

c) GRANTS DIRECTV's motion for partial summary judgment on the issue of whether DIRECTV is liable for an Intentional Breach pursuant to section 13(d) of the Agreement as to the Advanced Services and the Section 17200 Claims.

**B. Whether NRTC's Contingent Right to Substitute the Premium Services Under the 1994 Amendment Vested?**

DIRECTV contends that NRTC's contingent right to substitute the Premium Services under the 1994 Amendment never vested because Hughes Electronics—not DIRECTV—acquired USSB's rights and obligations to the Premium Services. DIRECTV's Mem. of P's & A's at 14:16–19:11. Thus, DIRECTV argues, "[t]he mere fact that DIRECTV's ultimate parent, Hughes Electronics, succeeded to certain contractual rights and duties pursuant to a merger does not confer those rights and duties upon DIRECTV." *Id.* at 15:21–23.

■ In general, a parent corporation and its subsidiary are legally distinct entities, and a contract under the corporate name of one is not treated as that of both. *Carte Blanche (Singapore) v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993). The only exception to this rule is when a court determines that the subsidiary is the alter-ego of the parent. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001). In this case, NRTC does not argue that DIRECTV is the alter-ego of Hughes. Instead, NRTC argues that DIRECTV has simply acquired the rights to distribute the Premium Services as contemplated by the parties under the 1994 Amendment.

"The words of a contract are to be understood in their ordinary and popular sense." Cal. Civ.Code § 1644. The term "to distribute," [21] means to "to pass out or deliver." *Random House Webster's College Dictionary* (2nd ed.). In this case, DIRECTV markets, sells, prices and packages the Premium Services in the same manner as any other programming. *See* DIRECTV's web site at *http://www.di-*

---

**20.** For purposes of trial, the threshold question to be submitted to the jury is whether DIRECTV Intentionally Breached the Agreement. If the jury answers this question in the affirmative, then NRTC will be able to offer evidence regarding its damages pursuant to section 13(d) of the Agreement. If, on the other hand, the jury finds that DIRECTV did not Intentionally Breach the agreement, then NRTC's remedies will be limited to those delineated under section 11 of the Agreement.

**21.** The 1994 Amendment uses the term "to distribute" to refer to the contingency of DIRECTV acquiring the rights to the Premium Services. Pilmer Decl., Exh. 11, 1994 Amendment at ¶ 1 ("If [DIRECTV] acquires the rights ... *to distribute* [the Premium Services], NRTC shall have the option ... to substitute such programming....") (emphasis added).

*rectv.comDTVAPP/learn/PackageOverview.jsp* attached as Exh. 103 to the King Decl. NRTC has submitted evidence to show that Hughes' role is limited to approving DIRECTV's periodic budgets, which incorporate projected pricing and sales for the programming DIRECTV sells, not just the Premium Services. *See* King Decl., Exh. 138, Austin Depo. at 66:14–67:25; Exh. 149, Chapman Depo. at 48:1–49:17, 50:9–51:3, 52:5–3:23 and 57:13–58:15. NRTC has also submitted evidence showing that DIRECTV's own employees understand that DIRECTV—not Hughes—"distributes" the Premium Services. For example, the employee who signed the Agreement testified at his deposition: "when the merger was consummated[,] ... we certainly believed we were going to have the rights to distribute the premium services." King Decl., Exh. 148, Campbell Depo. at 200:6–16, 201:2–7. Additionally, DIRECTV's executives agreed that DIRECTV became a "distributor" of the Premium Services after the merger with USSB. *See* King Decl. Exh. 148, Chapman Depo. at 59:10–22; Exh. 138, Austin Depo. at 36:16–22 and 37:1–7.

Furthermore, the Sales Agency Agreement between Hughes Electronics and DIRECTV requires DIRECTV to be responsible for all aspects of delivering the Premium Services to subscribers. *See* King Decl., Exh. 51 at ¶ 6. Hughes Electronics has no such responsibilities. *Id.* at ¶ 7. Additionally, several parts of the Sales Agency Agreement state, in substance, that "DIRECTV shall have the right to market, sell and transmit the Premium Services ... to DIRECTV Subscribers." *Id.* at Recital D & ¶ 4. These facts raise a triable issue of whether DIRECTV is a distributor of the Premium Services.

 Based on the foregoing, the Court finds that NRTC has raised a genuine issue of material fact whether DIRECTV has acquired the rights to distribute the Premiums Services.[22] Therefore, the Court DENIES DIRECTV's motion for summary judgment as to NRTC's claim 1 for breach of contract in case No. 99–5666, the Premium Services Claim.[23]

## IV. CONCLUSIONS

Therefore, and based on the above, the Court hereby:

1) GRANTS DIRECTV's motion for partial summary judgment on the issue of whether the limitation of liability provisions under sections 13(a),(b) and (c) of the DBS Agreement limit the relief sought by NRTC on its Premium Services Claim, Advanced Services Claim, Launch Fee Claim and Section 17200 Claim;

2) DENIES DIRECTV's motion for partial summary judgment on the issue of whether the limitation of liability provision under section 13(d) of the DBS Agreement limits the relief

---

22. At Oral Argument, on May 5, 2003, counsel for DIRECTV acknowledged that Hughes Electronics obtained the exclusive rights to distribute the Premium Services from the 101 W.L. orbital location. NRTC, as its counsel also acknowledged at Oral Argument, is not seeking the rights to distribute the Premium Services to the exclusion of the entire world, but simply to the exclusion of DIRECTV in NRTC's territory. Since the Court finds that NRTC has raised a genuine issue of material fact whether DIRECTV has acquired the rights to distribute the Premium Services, this necessarily means that there is also a genuine issue of material fact whether DIRECTV must grant NRTC the exclusive rights to distribute the Premium Services in NRTC's territory.

23. The Court need not reach the other issue raised by NRTC in its Opposition; specifically, whether the Sales Agency Agreement between Hughes Electronics and DIRECTV is a sham.

sought by NRTC on its Premium Services and Launch Fee Claims;

3) GRANTS DIRECTV's motion for partial summary judgment on the issue of whether the limitation of liability provision under section 13(d) of the DBS Agreement limits the relief sought by NRTC on its Advanced Services and Section 17200 Claims; and

4) DENIES DIRECTV's motion for summary judgment on the issue of whether NRTC's contingent right to substitute the Premium Services under the 1994 Amendment vested.

**IT IS SO ORDERED.**